JAMES T. SLACK, Plaintiff in Error, *v.* ROBERT McLAGAN, Defendant in Error.

ERROR TO FULTON.

It is a sufficient defence to an action upon a note to set up a breach of a covenant of warranty in a deed of land, for the price of which the note was given.

Courts of law and equity will give relief against the frauds of a vendor of real estate, by refusing an enforcement of the contract.

The facts constituting a fraud should be set forth in a pleading.

A decree or a judgment for the purchase-money does not necessarily imply a vendor's lien.

All evidence tending to prove the material facts, or either of them, in a case, is admissible, although it may not alone establish the whole case.

THIS was an action of debt commenced by the defendant in error against the plaintiff in error, on three promissory notes, in the Fulton Circuit Court, on the 5th of February, 1850.

The declaration contained nine special counts and the usual common counts. A general demurrer was sustained to the 3d and 6th counts, and was overruled to the 9th count.

The defendant pleaded *non est factum* to the first, second, fourth, fifth, seventh, and eighth counts, and offset to the same, with the addition of the ninth and common counts.

The defendant also pleaded eight special pleas, numbered from nine to sixteen, both inclusive, to the first, second, fourth, fifth, seventh, eighth, and ninth counts; these pleas are as follows: —

1. The 9th plea avers, that the notes sued on were obtained by fraud and circumvention; in this, at the time of the execution of the notes the plaintiff and defendant were joint owners and

partners in a steam mill; that the notes were given by the defendant for the plaintiff's interest in the mill; the defendant assuming the payment of the debts due by the firm. As a part of the same agreement, the partnership was dissolved, and the notes executed; that the plaintiff induced the defendant to make the agreement by falsely and fraudulently representing, that the debts due by the firm did not exceed much, if any, the sum of $2,100.

2. The 10th plea avers, that before and at the time of the execution of the notes sued on, the plaintiff and defendant were the owners of and partners in a certain steam mill, known as the Franklin mills; that as such they carried on business, contracting debts due to and from the firm; that in the transaction of the business the plaintiff had exclusive control of the finances and contracted all the debts, and that the defendant had the management of the mechanical part of the business, and had no knowledge of the contracts, debts, and accounts.

The plea further avers, that on the day of the date of the notes the plaintiff proposed to the defendant to dissolve the partnership; that the defendant should have all debts due the firm, pay all debts due from the firm, and that the defendant should purchase the plaintiff's interest for the amount of the three promissory notes and execute his notes therefor, and that the plaintiff, with a design to defraud the defendant, represented falsely and fraudulently, that the debts did not exceed $2,100.

The plea then avers, that defendant was induced by this representation to accept the proposition and to execute the notes, and so charges that they were procured by fraud and circumvention.

3. The 11th plea sets up a failure of consideration, in this, that the notes were executed in consideration of the plaintiff's interest in a certain mill, and the tract of land on which it was situated, and that at the same time the plaintiff conveyed by deed the premises to the defendant, with a covenant to warrant and defend the title to the premises against all persons whomsoever; that the plaintiff did not have then, nor since, any legal title to the premises; but on the contrary, the plaintiff had only a bond for a deed from one Thornton Easley, from whom the plaintiff and defendant purchased, conditional for the execution of a deed on the payment of the purchase-money.

The plea then avers that the plaintiff failed to pay the purchase-money or to procure a deed, but that the premises were sold under the order of the proper court to satisfy the debt.

4. The 12th plea sets up failure of consideration in this, the plaintiff and defendant were partners in the milling business in

Haywood county, Tennessee; the plaintiff hired hands and made the contracts; that the defendant worked the hands and run the mill; that the defendant had no knowledge of the debts contracted except through the information of the plaintiff.

The plea then avers the same proposition and representation by the plaintiff, as stated in the 10th plea, and that the plaintiff exhibited a balance sheet showing the liabilities of the firm at $2,091.50; that the defendant under this inducement accepted the offer.

The plea then avers that the debts did exceed the sum of $2,100, and that they were more than $7,000; and that the interest of the plaintiff was worthless, which was known to the plaintiff and unknown to the defendant; that the defendant has been compelled to pay the said sum of $7,000, which has exhausted the whole of the partnership property and funds, besides a large sum of the defendant's private funds.

5. The 13th plea also sets up failure of consideration in this, that the consideration of the notes was the sale of a certain tract of land, describing it, and that at the time (which was the same time the notes were executed) the plaintiff fraudulently and deceitfully represented to the defendant that he had a good title, when in truth he had no title whatever then, nor has he since had, and that the plaintiff knew that such representation was false.

6. The 14th plea is also for failure of consideration in this, that the consideration of the notes was the sale of the tract of land described in the 13th plea, and that afterwards, on the 3d day of June, 1849, the plaintiff executed and delivered his deed, in consideration of five thousand dollars, conveying the premises to the defendant, in which the plaintiff covenanted that he would warrant and defend the title against the title, claims, or demands of all and every person or persons whatsoever claiming, through, under, and by said plaintiff.

The plea then avers that the land was sold by virtue of a decree of a court of chancery, in and for the State of Tennessee, at Brownsville, on the 10th November, 1841, for the purchase-money due to one Thornton Easley, from the plaintiff or some other persons.

7. The 15th plea sets up failure of consideration in this, that the consideration was the sale of the tract of land described in the 13th plea; that the plaintiff conveyed the land by deed with covenant, as stated in the 14th plea, and that the land was legally sold to satisfy a debt of the plaintiff's, and some other persons, for the purchase-money due one Thornton Easley, for

the same tract, and so the title has failed by virtue of a claim against and under the plaintiff.

8. The 16th plea is for failure of consideration in this, that the consideration of the notes sued on was the sale of the tract of land described therein; that on the 3d day of June, 1839, the plaintiff conveyed by deed the said tract to the defendant, and thereby for the consideration of five thousand dollars, did give, grant, bargain, sell, release, convey, and transfer to the defendant, his heirs and assigns, the tract of land particularly described in the plea, and did by the same deed covenant " to and with the defendant, his heirs and assigns, that the title to the above described tract, piece, or parcel of land, he the said plaintiff would warrant and forever defend against the title, claim, and demand of all and every person or persons whatsoever claiming through, under, and by the said plaintiff."

The plea then avers a breach in this covenant; because he says that at the time of said sale there was due and owing from the plaintiff and the defendant, as partners to one Thornton Easley, a sum of money for the purchase-money of the premises, the same having been bought of the said Easley by the plaintiff and defendant, " which sum of money was a lien on said premises, and said premises were legally sold to satisfy said lien, and the said defendant was ousted and ejected from said premises," and so the plaintiff broke his covenant.

The plea then claims damages, and prays that they may be offset against the plaintiff's demand.

The plaintiff joined issue to the country on the pleas of *non est factum* and offset, and demurred generally to the 9th, 10th, 11th, 13th, 14th, and 15th pleas, and generally and specially to the 12th and 16th pleas.

The demurrer was overruled as to the 12th and 16th pleas, and sustained to all the rest; the defendants abided by the demurrer.

By leave, the plaintiff replied double to pleas 12 and 16, on which issues of fact were formed.

1st. To 12th plea; that he did not falsely and fraudulently represent to the defendant that the debts due from said firm did not exceed the sum of $2,100.

2d. To 12th plea; that the defendant had not been compelled by law to pay $7,000, or any part thereof over the sum of $2,091.50.

3d. To 16th plea; that the plaintiff did not covenant that he, the said plaintiff, the title to the said tract of land would warrant, and forever defend, against the title, claim, and demand of

21 *

all and every person or persons whatsoever claiming through, under, and by said plaintiff.

4th. To 16th plea; that there was not a lien on said land and said premises legally sold to satisfy said lien, and the said defendant ousted and ejected from said premises.

On these issues the cause was tried by the Hon. Ira O. Wilkinson, presiding in Fulton county, a jury being waived, at the May term of 1853.

On the trial, the plaintiff offered one note of $1,000, being the same set out in the 19th count, which was admitted without objection, and the plaintiff rested his cause.

The defendant then offered a deed dated 3d of June, 1839, executed by the plaintiff to the defendant, conveying in fee the tract of land described in the 16th plea, in consideration of $5,000, with a covenant corresponding exactly with that set out in the 16th plea, and with this statement by way of describing the land, "the same piece or parcel of land which the said Robert McLagan and James T. Slack purchased of Thornton Easley, and for which the said Thornton Easley executed his bond on the third day of May, 1838, to make a good and sufficient title in fee-simple, with general warranty when the purchase-money specified in said title bond shall be paid, and when the same and interest thereon shall be paid to the said Easley, or his assignees, the said Thornton Easley is hereby authorized and requested to execute a deed and convey said piece or parcel of land to the said James T. Slack," which deed was admitted by the court.

The defendant then offered an exemplification of a record, showing the proceedings in a cause by Thornton Easley against the defendant, before the chancellor for the western division of the State of Tennessee, sitting at Brownsville, Haywood county, Tennessee, commencing on the 29th day of October, 1840. The bill was filed for the purpose of enforcing the complainant's lien for the purchase-money of the tract of land described in the pleadings in this cause, and sold to the plaintiff and defendant, which it was alleged was unpaid. The conveyance by the plaintiff to the defendant was stated in the bill as a reason for not making McLagan a party. Personal service was had on Slack, and on the trial it was proved by the complainant Easley, that he had sold said tract of land to the plaintiff and defendant in this cause, for $625, payable on the 1st of January, 1840, with interest from the 1st of January, 1838; that Easley had executed a bond to McLagan and Slack for title when the money was paid, and that Easley had retained the legal title in himself as security; that McLagan

had conveyed to Slack, and that the purchase-money was wholly due and unpaid. On this proof a decree was entered at the November term, 1841, of said court, that Slack pay the amount due for said purchase-money, within ninety days, and in default that the "clerk and master" sell said tract of land to satisfy the claim of Easley.

The record further shows a sale of the land to Thornton Easley, the complainant, and a confirmation of the sale by the chancellor.

This record is certified by the clerk of the court and the chancellor, under the law of congress relative to judicial proceedings in foreign States.

At the same time, in connection with the exemplification, the defendant offered the deposition of Thornton Easley, taken by virtue of a commission from the clerk of Fulton county, under the statute of this State. Due notice was given and accepted by the attorneys of the plaintiff, and on the trial no exceptions were taken to the form of the deposition.

There was attached to the commission the original bond of Thornton Easley to the plaintiff and defendant, which was examined and identified by the witness.

The witness swears that he sold the tract of land described in the bond exhibited at the time, and on the terms mentioned in the bond, to the plaintiff and defendant; that the full names of the firm of McLagan and Slack were Robert McLagan and James T. Slack; he identifies the bond attached to the commission as his original bond, and that it contains the contract under which the purchase was made; the witness states that McLagan and Slack took possession of the property soon after the date of the bond, built a steam mill, and remained in possession four or five years; that the witness was not paid the purchase-money, and that he filed a bill for specific performance; obtained a decree of sale, and that the same was sold by the clerk and master to the witness, the precise time not recollected; that immediately after the sale to the witness, he obtained possession by virtue of such sale; that he never made a deed to McLagan and Slack, but merely the bond referred to; that he had a lien on the land for the purchase-money, and the land was sold to satisfy that lien.

The bond is dated May 3, 1838, executed by Thornton Easley, under his seal, to Robert McLagan and James T. Slack, in the penal sum of $1,250, conditioned to be void on the making of a warranty deed, when the obligees should pay $625, with interest from the 1st day of January, 1838, on the 1st

day of January, 1840, conveying the premises described in the pleadings.

The plaintiff objected to the introduction of the exemplification of the record, the bond and the deposition, which was sustained, the evidence excluded and exception taken by the defendant.

The defendant rested his cause, when the court decided that the plaintiff was entitled to recover on the note offered in evidence.

The defendant entered motions both for a new trial and in arrest of judgment, which were overruled by the court and exceptions taken.

The court then ordered the clerk to assess the damages, and on his report thereof, judgment was entered for $1,000 debt, and $720.33 damages and costs, to which the defendant excepted.

The defendant below now brings the cause to this court to reverse this judgment, and makes the following assignments of error, to wit: —

1st. The circuit court erred in sustaining the plaintiff's demurrer to pleas 9, 10, 11, 13, 14, and 15.

2d. The circuit court erred in excluding the evidence of the defendant on the trial.

3d. The circuit court erred in referring the assessment of damages to the clerk.

4th. The circuit court erred in overruling the motion for a new trial.

5th. The circuit court erred in overruling the motion in arrest of judgment; and

6th. The circuit court erred in rendering judgment for the plaintiff, and refusing to render judgment for the defendant.

W. C. GOUDY, for plaintiff in error, *ex parte.*

SCATES, J. The declaration contained nine special counts on written obligations, with the common counts.

To these, there were sixteen pleas. Several demurrers were sustained to the 9th, 10th, 11th, 13th, 14th, and 15th special pleas; and the first question we notice, arises upon these demurrers.

The demurrers to the 11th and 13th pleas, should have been overruled. The eleventh sets up a sufficient defence. Defendants conveyed a tract of land, which was the consideration of the obligations sued on, with covenant of warranty against all

persons. A breach of this covenant is the defence set up. It shows that defendant had a title bond only, and subject to a vendor's lien for the purchase-money; and that the land was sold under that lien, on the 23d of April, 1842, by virtue of an order or decree of the proper court of Haywood county, Tennessee, where the land lay, and an account of the default and neglect of defendant.

The propriety of such a defence, where parties do not clearly manifest an intention to rely upon their covenants alone, we shall regard as decided in Gregory et al. *v.* Scott, 4 Scam. R. 392.

In Tyler *v.* Young et al. 2 Scam. R. 446, a similar plea was sustained.

The thirteenth plea sets up the same consideration; and as a defence, the fraudulent and deceitful representations of defendant, that he had a good title — knowing that he had no title whatever — and that he has not now and never had any title.

The doctrine of *caveat emptor,* applicable to sales of real estate, leaves purchasers to protect themselves by covenants of warranty, except for the frauds of vendors, against which, courts of law as well as equity will give relief, by refusing an enforcement of the contract. Ownigs *v.* Thompson et al. 3 Scam. R. 502. Fraud would equally vitiate a contract, whether by parol or in writing, or with or without covenants of warranty.

The only deficiency noticed by the court, in Waun *v.* McGoon, 2 Scam. R. 77, to a similar plea, was a want of a particular description of the land. This plea sets it forth by metes and bounds. These two pleas set up bars to this action, and demurrers should have been overruled.

The other pleas demurred to, are insufficient, for want of traverses of the facts represented to exist by the defendant, so far as fraud is attempted to be set up. The ninth plea should have alleged that the debts did exceed $2,100; that defendant well knew it, and that plaintiff was ignorant of the amount. There is no traverse or denial of the existence of the facts, which the plea alleges were fraudulently represented as existing, unless we hold it to be a sufficient allegation of fraud, to allege, in general terms, that certain fraudulent representations were made. This is not sustainable upon the principles of pleading or of justice. The facts constituting the fraud, should be set forth in the pleading.

The 10th plea offers an excuse for plaintiff's ignorance of the state of his accounts, but in all other respects is liable to the same objections as the ninth.

The 14th and 15th pleas allege the consideration of the obligations sued on, to be title to a certain tract of land, conveyed with warranty; and set up a failure of the consideration to consist in a failure of title, by reason of a decree in chancery, obtained by the vendor to defendant and another, for the sale of said land for the purchase-money due therefor, and under which it was sold.

The 15th plea sets up as a failure of consideration, that the land was legally sold to satisfy the purchase-money due for said land, from defendant and another.

The allegations will be taken most strongly against the pleader, who is supposed to set forth all the facts, or enough to sustain his action or defence.

These pleas are defective for want of material allegations. There is no allegation of a vendor's lien, incumbering the title in the hands of defendant or plaintiff.

A decree or a judgment for the purchase-money does not necessarily imply a vendor's lien; nor would a sale without such lien necessarily transfer a good title or incumber the title previously conveyed, although it might be under a decree or judgment for the purchase-money, and might also be legally made. It might be on notes secured by mortgage of other property, or by sureties; either of which, if not otherwise agreed, might discharge the land of a vendor's lien for the purchase-money. See 3 Sugd. on Vend. 182, 183, c. 18.

Although such a sale might be good for such title as defendant had at the time, yet the pleas show that he had conveyed long before to plaintiff, and are silent as to a conveyance to defendant by his vendor. We will presume, as against the pleader, that such conveyance had been made. There is not even a general averment of a lien, nor that either of these sales incumbered the title to plaintiff's prejudice.

The plaintiff, on the trial, offered in evidence the transcript of a record of the chancery court of Haywood county, Tennessee, between Thornton Easley, complainant, and James T. Slack, defendant; and which was certified under the private seal of the clerk and master of said court, there being no public seal provided: his official character, and the form of his certificate, are duly certified to by the presiding chancellor of said court.

This record was excluded, and we think erroneously. The authentication appears to be conformable to the act of Congress of 26th May, 1790. (See act in App. R. S. 45, p. 624.)

The certificate in Craig *v.* Brown, 1 Peters, C. C. R. 353, was held insufficient, because the judge did not certify that the

clerk's certificate was in due form. The certificate in this case is full and complete under the act; and so far as this question is concerned the record was admissible in evidence.

We also think it clearly admissible in evidence on the issues under the 11th and 16th pleas — the latter of which particularly connects the defendant as a privy in the transaction passed upon in the decree.

It is unnecessary here to determine how far he is bound or concluded by that decree, on account of his privity in the contract. It is enough to entitle it to admission, that it affords *primâ facie* evidence of facts material to these issues.

The question as to what effect the record should have in evidence, does not arise in this record, because it was wholly excluded, and can only be raised after it is introduced.

The court should have admitted the bond and deposition of Thornton Easley, under the issues. No valid objection to either has been made before the court, and each is admissible, as tending to prove the issues for plaintiff. The bond was admissible, as tending to prove the character of defendant's title, and that a vendor's lien might or did exist under it, as settled by the law of Tennessee. Eskridge *v.* McClure et al. 2 Yerg. 84. So, also, of the deposition; and that there had been an ouster by paramount title.

All evidence tending to prove the material facts, or either of them, is admissible, although it may not alone establish the whole case. Rogers *v.* Brent, 5 Gilm. R. 587.

The defendant having offered a promissory note only in evidence, the court properly referred the assessment of the damages to the clerk.

Judgment is reversed, and cause remanded for a new trial.

*Judgment reversed.*