# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

## OCTOBER TERM, 1881.

[No. 987.]

## L. B. ABERNATHIE, APPELLANT, *v.* CON. VIRGINIA M. CO., RESPONDENT.

COMPROMISE OF INTEREST IN MINING GROUND—AUTHORITY TO MAKE— ACQUIESCENCE IN.—Where a compromise is made between several persons as to the respective interests which each shall have in certain mining ground, W., one of·said parties, being represented by G., and where all the parties to the compromise, including W., for a period of fifteen years, abided by its terms and acted upon it, and conveyed their interests in the ground in accordance therewith, and received the proceeds thereof: *Held*, that these circumstances, in connection with the fact that the defendant at the trial maintained the validity of the compromise which it alone, as the successor of W., could have attacked, rendered the question of G.'s authority to act for W. immaterial to the plaintiff's case.

IDEM—HOW INTERESTS OF PARTIES MAY BE DETERMINED—INSTRUCTION.— The court instructed the jury: "To support the statement of any of the witnesses, you can consider the probability of his evidence and the facts to which he testifies, and any facts or circumstances detailed which might tend to corroborate or sustain the statement of any witness; and you may also take into consideration any description or calls in the deeds introduced in evidence, and the manner, conduct, and action of the original owners in relation to the ground, in determining the question whether or not the plaintiff and his associates each owned more than one hundred feet in the Sides claim," etc.: *Held*, upon the facts of this case, to be correct.

Idem—Assessment Book Admissible in Evidence.—The Sides company was an unincorporated association. It had officers, kept a record of its meetings, and an assessment book which contained a list of all the owners of the Sides claim, with each of whom was kept an account showing the amount of assessment levied and the payments made. This book was, at all times, open to inspection, and no objection had ever been made thereto. The court instructed the jury that if they believed plaintiff had actual knowledge of its contents they could then consider the entries mentioned as admissions of the extent of his ownership: *Held*, that the instruction was correct.

Statute of Limitations — Possession of Tenant in common — When Adverse—Notice.—To make the possession of one tenant in common adverse as against the others, it is not necessary that notice should be given of the adverse intent; but the intent must be manifested by outward acts of an unequivocal kind.

Idem—Plaintiff not Tenant in Common.—The Sides company did not enter as tenant in common with plaintiff; but as owner of the entire claim. It never acknowledged plaintiff's title, but held under an avowed claim to the whole and in exclusion of plaintiff: *Held*, that its possession was adverse to plaintiff from its inception.

Appeal from the District Court of the First Judicial District, Storey County.

The facts sufficiently appear in the opinion.

*A. C. Ellis*, for Appellant:

I. There never was any compromise agreed upon between plaintiff or Sides, and Gregory acting for Winters. Gregory was never authorized to make any compromise whatever, by which Winters was to alienate or acquire any mining ground on the Comstock. Gregory should have been authorized in writing to alienate this property, or if he acted without authority in writing, his acts should have been ratified by Winters, either directly, or in some way acquiescing, accepting the fruits of the transaction, or doing something which, as matter of law, would operate as a ratification. Of all this, there is a total absence of testimony.

II. The instruction of the court relative to the deeds and the recitals therein, was error, and misled the jury. The testimony was inadmissible, and incompetent for the purposes for which it was admitted. As a contemporaneous assertion of the assumed fact, that a compromise was made

with Gregory, and for Winters, it was as inadmissible as if it had been made by a stranger to the ground and to the common source of title.

III. The books of the company organized to develop the ground, were inadmissible in evidence. They are in no respect a declaration or admission by plaintiff or Sides, that they each had so many or such a number of feet as, added to what they had deeded to others, would make a hundred feet. The instruction touching this subject was clearly error. No estoppel is set up. It can not be shown that any grantor of defendants would have been deprived of any feet by any recognition plaintiff or Sides made of title in Winters; it has not been shown that any one ever acted on any such recognition. No estoppel can arise against a party not fully advised or acting under mistake.

IV. The statute of limitation does not apply to this case. The possession of one tenant in common is the possession of all. Actual ouster at a time more than five years before the commencement of the action, was not shown. The possession of the defendants and grantors has been a mere silent possession. No acts of defendant or its grantors were shown, other than mere quiet occupancy of portions of the claim. There is no proof that officers or even stockholders of the Sides corporation ever declared to anybody, much less plaintiff or Sides, that such corporation claimed and occupied adversely to plaintiff or Sides. The charge of the court on this point was error, and the verdict may have been on limitation alone. (*Miller* v. *Meyer*, 46 Cal. 535; *Coleman* v. *Clements*, 23 Id. 245; *Owen* v. *Morton*, 24 Id. 373; *McClung* v. *Ross*, 5 Wheat. 116; *Clymer* v. *Dawkins*, 3 How. 674; *Abercrombie* v. *Baldwin*, 15 Ala. 363; *Blakeney* v. *Ferguson*, 20 Ark. 547; *Colburn* v. *Mason*, 25 Me. 434; *Jackson* v. *Tibbetts*, 9 Cow. 241; *Clapp* v. *Bromaghan*, Id. 530; *Gray* v. *Givens*, Riley (S. C.), 41; *Bayley* v. *Tramnell*, 27 Tex. 317; *Buckmaster* v. *Meedham*, 22 Vt. 617; *Holley* v. *Hawley*, 39 Id. 525; *Buckman* v. *Buckman*, 30 Me. 494; *Warfield* v. *Lindell*, 30 Mo. 272; *Chandler* v. *Ricker*, 49 Vt. 128; *Squires* v. *Clarke*, 17 Kan. 84; *Ball* v. *Palmer*, 81 Ill. 370; *Linker* v. *Benson*, 67 N. C. 150; *Brooks* v. *Fowle*, 14 N. H. 248; *Wilson*

v. *Watkins,* 3 Pet. 51; *Manchester* v. *Doddridge,* 3 Ind. 360; *Ruffners* v. *Lewis,* 7 Leigh (Va.), 720; *Roberts* v. *Morgan,* 30 Vt. 319.)

*C. J. Hillyer,* for Respondent:·

I. The court did not err in instructing the jury relative to the deeds offered in evidence. The instruction permitted the jury to consider only the descriptions and calls, and not the recitals in the deeds. The calls and descriptions, and in fact the recitals of their deeds, were unquestionably competent evidence to contradict the testimony of Sides and Belcher. All the deeds of the co-locators of plaintiff, with their calls and descriptions, were admissible as part of the *res gestæ.* The calls and descriptions were evidence, not of .declarations, but of acts. The controverted point was, whether the compromise had been made, and whether the parties held under that compromise or otherwise. Upon this point the actions and conduct of the parties in respect to the claim were not only competent, but the best evidence. The making of a deed with certain·calls and definitions was as much an act as work upon the claim or the payment of an assessment. We were as clearly entitled to prove, and the jury to consider, the former as the latter.

II. The assessment book of the Sides association was admissible in evidence. Abernathie was a member of the company; the secretary who kept the books was his agent.· He was chargeable with knowledge of the contents of the books, whether he had actual knowledge of them or not. (1 Greenl. Ev., sec. 493; *Allen* v. *Coit,* 6 Hill, 318.) At the trial defendant expressly disclaimed any intention to prove or rely upon an estoppel. The purpose of the testimony was to establish the ˙main fact that the compromise had been made, and ownership in accordance therewith. It went to the existence and extent of the plaintiff's title, and not in the least to his right to assert any title which he in fact had.

III. The instructions relative to the statute of limitations were correct. If the occupation of the Sides company was exclusive, then the intention to hold adversely might be in-

dicated by acts sufficiently significant and notorious to charge the plaintiff with notice and set the statute in motion, whether he had actual notice or not. (See authorities in opinion.)

IV. But there is another view which disposes of this subject. There was nothing in the relation which existed between the Sides company and the plaintiff and his grantor in respect to the interest in controversy, which required any different character of evidence to establish an adverse possession than is required between strangers. It is only where a person derives title to an undivided portion of the premises, or in some similar manner admits the ownership of others as co-tenants with him, that the rule distinguishing the character of acts necessary to constitute adverse possession has any operation. But the reason, and with it the rule, ceases where one enters and takes exclusive possession under a conveyance to him of a title to the entire premises. Under these circumstances he sustains no fiduciary relation to others claiming adversely to him either the whole or some undivided interest. The Sides company was the purchaser of the entire claim of five hundred feet. It derived its title from persons who, at the time of its purchase, professed to own and possess the whole five hundred feet. The conveyances from its grantors were, at the time of its purchase, placed on record. These recorded conveyances were of themselves notice to the plaintiff and his associates that the entry and possession of the corporation were adverse to any title which they then had or claimed. (See authorities in opinion.)

By the Court, BELKNAP, J.:

The plaintiff having filed his protest in the United States Land Office against the issuance of a patent by the government to the defendant for the mining ground described in the complaint, thereafter brought this action to determine the right of possession thereto, in compliance with the requirements of the mining laws of congress. A trial in the district court resulted in a verdict for the defendant, and from the judgment thereupon entered and an order denying

a motion for a new trial plaintiff has appealed.   The errors assigned will be considered in the order in which they have been presented.

Appellant, in the first place, insists that the evidence is insufficient to justify the verdict.   To reach an understanding of this point it is necessary that some of the facts developed at the trial should be stated.

The action involves the right of possession to an undivided fifty feet of the south five hundred feet of the Consolidated Virginia mine on the Comstock lode.   This five hundred feet was located by Sides, Baldwin, Belcher, and plaintiff in the month of June, 1859, and was known as the Sides ground or claim.   Plaintiff's theory is, that this claim originally embraced eight hundred feet; that after its location a fear existed among its owners that at a threatened meeting of the miners of the district its length would be reduced to five hundred feet, and in order to frustrate such action and prevent the excess over five hundred feet from becoming subject to occupation by strangers, they conveyed it to some of their friends, and the claim thus segregated was thereafter known as the Best and Belcher claim; that the interests of plaintiff and of his co-locators thereby became reduced to one hundred and twenty-five feet each, and that these several interests have been reduced by conveyances to twenty-five feet each, which amount of ground they now own, excepting Sides, who sold his twenty-five feet to plaintiff's grantor shortly before the commencement of this action.

The defendant contends that during the month of June, 1859, John D. Winters claimed to own three hundred feet of the ground embraced in the Sides location, and that pending such adverse claim Winters sold an undivided half of his interest to one James O. Gregory.   Thereupon Gregory proceeded to the premises for the purpose of representing his own and Winters' interest.   Shortly afterwards the conflicting claims were compromised by plaintiff and his associates agreeing with Gregory, for himself and Winters, that the ground should be divided into five interests, of one hundred feet each; that plaintiff and his associates should

each be entitled to an undivided one hundred feet, and that the remaining undivided one hundred feet should be owned by Gregory and Winters. Defendant concedes the fact of the segregation of the Best and Belcher ground, as claimed by plaintiff.

The particulars in which the evidence is alleged to be insufficient is, that it nowhere appears that Gregory had authority from Winters to adjust the differences mentioned. If this compromise was made, and from the verdict we must assume that it was, it matters not to plaintiff whether Gregory was or was not authorized to make it. From the year 1859 until the year 1875, the locators of the Sides ground abided by the terms of the settlement made; under it the plaintiff and Sides, as well as Baldwin and Belcher, received without molestation the one hundred feet to which each was entitled, and severally made conveyances down to March, 1863, by which each of them alienated, in the aggregate, the significant interest of one hundred feet, to which he was entitled under the compromise.

Upwards of fifteen years has elapsed since each received the proceeds of such sales, and no one of them has ever been interrupted in the enjoyment thereof. Neither they nor their grantees have ever been molested in the possession of the respective interests received under the terms of the compromise, and in the year 1865 Winters conveyed to plaintiff's grantee whatever interest he then had in the Sides ground. These circumstances, connected with the further fact that the defendant at the trial maintained the validity of the compromise which it alone, as the successor in interest of Winters, could have attacked, rendered the question of Gregory's authority immaterial to the plaintiff's case.

The second assignment of error consists in the giving of an instruction to the jury containing in part the following language: "To support the statement of any of the witnesses you can consider the probability of his evidence and the facts to which he testifies, and any facts or circumstances detailed which might tend to corroborate or sustain the statement of any witness; and you may also take into consideration any description or calls in the deeds intro-

duced in evidence, and the manner, conduct, and action of the original owners in relation to the ground, in determining the question whether or not the plaintiff and his associates each owned more than one hundred feet in the Sides claim," etc.

At the trial the defendant introduced in evidence the conveyances of the property made by the locators. These deeds showed that Belcher, after having conveyed fifty feet to Gregory, made a further conveyance of fifty feet to Rickelton, in which he recited the fact that the ground conveyed embraced his entire interest in the Sides claim. A similar recital is contained in the deed of Sides to A. E. Head for one hundred feet. The objection is to the effect that neither these recitals nor any deeds, save those made by plaintiff or Sides, could have affected plaintiff's interest, and should not, therefore, have been considered by the jury. These deeds were not offered in evidence for the purpose of estopping the plaintiff in the assertion of his claim, but for the purpose of establishing defendant's theory of the compromise and the interests taken by each of the locators under it. With this character of evidence defendant proved that each of the locators cenveyed one hundred feet and no more of the Sides ground. This certainly was competent evidence of the extent of the ownership of the several locators, and tended to disprove plaintiff's theory that they severally owned one hundred and twenty-five feet.

In this view the attention of the jury was properly directed in the quoted instruction to the calls and descriptions, and not to the recitals in the deeds. These recitals were, however, admissible for the purpose of rebutting the testimony of Sides and Belcher, each of whom had sworn that the original interests of the location was one hundred and twenty-five feet, and not one hundred feet, as claimed by defendant; and, although no estoppel was claimed, the recital in Sides' deed was conclusive against plaintiff's claim to the twenty-five feet obtained through him.

The third exception consists in the admission in evidence of one of the books of the Sides cor-pany. The Sides com-

pany was an unincorporated association, composed of the owners of the claim, and organized for the purpose of providing means for its development. It had officers, kept a record of its meetings, and a book called the assessment book. This book has not been made a part of the record, but is said by counsel to have contained "a list of all the owners of the Sides claim, with each of whom was kept, upon a separate page, an account showing the amount per foot of each assessment levied, the number of feet assessed to such owner, the total amount of the assessments, and the payments made by him." It was shown that the persons. claiming to be the owners of the Sides ground paid their respective assessments under this system. That there never was any controversy concerning the proportionate amount which each member of the association was required to pay, and that assessments were collected on five hundred feet, the full number of feet in the claim. That plaintiff and those to whom he had conveyed, paid on one hundred feet and no more; that those deriving title from Sides paid on one hundred feet, and no more, and that Belcher and Baldwin, and those representing each of their interests, paid on a like number of feet, and that Gregory and Winters and their grantees did the same. In this manner the claim was worked for two years, and between forty thousand dollars and sixty thousand dollars expended without a suggestion of any inaccuracy or error in the assessment book.

It was also proven that this book was at all times open to the inspection of the members of the company at its office. In submitting the book to the consideration of the jury they were instructed that if they believed plaintiff had actual knowledge of its contents they could then consider the entries mentioned as admissions of the extent of his ownership. The objection was directed to the point that plaintiff could not be bound by the entries, unless he had actual knowledge of them at the time. This objection is disposed of by the terms of the instructions.

The remaining objection arises upon instructions touching the application of the statute of limitations to the facts

of this case.   In the year 1863 an incorporation was created under the laws of this state, called the Sides Silver Mining company.   In the month of April of that year this incorporation entered into the exclusive possession of the Sides ground, claiming to be the owner of the entire claim under a deed from those who professed to own it, and continued such possession and claim openly and notoriously until some time in the month of May, 1868, when it conveyed the property to the defendant.   This adverse possession of the Sides silver mining company, as well as that of its predecessors in interest, is pleaded in bar of plaintiff's recovery.

From the fact that both parties claim title from a common source, plaintiff contends that the evidence of ouster was insufficient to set the statute in motion, in this, that no notice of an intention to hold adversely was given him.   In cases where the relation of tenancy in common exists, the exclusive possession of one tenant in common is not necessarily inconsistent with the continuance of this relation, and the commencement of an adverse possession must be unequivocally manifested.   It is not necessary, however, in order to set the statute in motion in favor of one tenant in common against his co-tenant, that actual notice of an intention to hold adversely should be given.   "To make a possession of tenant in common adverse as against the other," says Angell in his treatise on the limitation of actions, "it is not necessary that notice should be given of the adverse intent; but the intent must be manifested by outward acts of an unequivocal kind."   (Sec. 429; *Humbert* v. *Trinity Church*, 24 Wend. 587; *Lodge* v. *Patterson*, 3 Watts, 74; *Owen* v. *Morton*, 24 Cal. 373; *Weisinger* v. *Murphy*, 2 Head (Tenn.), 674; *Culler* v. *Motzer*, 13 S. & R. 356; *Bradstreet* v. *Huntington*, 5 Pet. 440; 2 Greenl. on Ev., sec. 557.)

The uncontradicted testimony in this case, however, shows that the Sides corporation did not enter as tenant in common with the plaintiff, but as owner of the entire mining claim.   It at no time acknowledged plaintiff's title, but held under an avowed claim to the whole, and especially in exclusion of him and those under whom he claims, claim-

ing the identical ground in controversy through conveyance from Winters and Gregory. Not claiming an undivided portion of the premises, nor admitting ownership in any wise in plaintiff or Sides, it can not be maintained that such possession was in support of the title claimed by plaintiff. Under the circumstances it was adverse from its inception. This principle was enforced under analogous facts by Judge Story in the case of *Prescott* v. *Nevers*, 4 Mason, 326. In that case the defendant claiming the whole estate entered under a deed purporting to convey all of it to him, although his title was good only to an undivided fourth interest in common with others. It was then said: "But he (defendant) made an actual entry into the whole, claiming the entirety, in fee and of right. His acts of ownership were such as amounted to a disseisin of the co-tenants; for he entered as sole owner; his possession was openly and notoriously adverse to them; and his acts went to a waste of the estate, and their utter disseisin. I take the principle of law to be clear, that where a person enters into land under a claim of title thereto by a recorded deed, his entry and possession are referred to such title; and that he is deemed to have a seisin of the land co-extensive with the boundaries stated in his deed, where there is no open adverse possession of any part of the land so described, in any other person."

The doctrine is discussed in *Parker* v. *Proprietors etc.*, 3 Met. (Mass.) 100. In that case defendants acquired title through one Tyler, whose title was valid to an undivided portion of the estate only. The court said: "It does not appear that Tyler had notice or knowledge of the defect in his title. But whether he had such knowledge or not, it is very clear that he was in possession, claiming the entire title, and this undoubtedly was an adverse possession, which, being open and notorious, amounts to a disseisin. To constitute a disseisin, it is not necessary, at the present day, to prove the forcible expulsion of the owner, nor is it necessary for a tenant in common to prove an actual ouster of the co-tenant. If he enters, claiming the whole estate, the entry is adverse to the other tenants. The intention so

to hold the estate must be manifest, as it is in the present case, and the open and notorious possession of Tyler was constructive notice of a claim adverse to those heirs of Moors, who had not conveyed their title. If they had notice by the deeds to Hale, and by him to Tyler (which were duly recorded), they must have known that the latter never entered as tenant in common, but that he entered as purchaser of the entire estate."·

The same principle was announced in *Bogardus* v. *Trinity Church*, 4 Paige Ch. 178, as is thus epitomized by the reporter: "Where one of several tenants in common conveys the entire premises held in common, and the grantee enters into possession under the conveyance, claiming title to the whole premises, such possession is adverse to the co-tenants of the grantor, and at the expiration of the period of limitation, their right will be barred. See also *Clymer's Lessee* v. *Dawkins*, 3 How. 674; *Jackson* v. *Smith*, 13 Johns. 407; *La Frombois* v. *Jackson*, 8 Cow. 589; *Kittredge* v. *Locks and Canals*, 17 Pick. 246.

The judgment and order are affirmed.