[Department Two—June 29, 1883.]

MARCUS UNGER, RESPONDENT, v. EMILY MOONEY ET AL., APPELLANTS.

EJECTMENT—STATUTE OF LIMITATIONS—ADVERSE POSSESSION.—In order to make out an adverse possession sufficient to sustain a defense in ejectment under the Statute of Limitations, five elements are required. (1) there must be an actual occupation, open and notorious, not clandestine; (2) the possession must be hostile to the title of the plaintiff; (3) it must be held under a claim of title exclusive of any other right; (4) it must be continuous and uninterrupted for a period of five years before the commencement of the action; (5) payment of taxes as provided by section 325 of the Code of Civil Procedure.

ID.—TENANTS IN COMMON—OUSTER.—The possession of one tenant in common is the possession of his co-tenant. There is no element of hostility in such a possession. An actual adverse holding will not operate as an ouster, and set the Statute of Limitations in motion, until the tenant out of possession has notice of such holding. But if the hostile character of the possession is so openly manifested that his observation as a man reasonably careful of his interests would be sufficient to discover it, he will be deemed to have notice. Thus, where one of two tenants in common conveys to a third person by deed purporting to convey the whole land, and the deed is recorded by the grantee, who enters under it, such entry is hostile in its nature, and the mere fact of possession by a stranger is enough to put him on inquiry, and charge him with notice. So, the making of valuable improvements, paying the taxes upon the land, and receiving the rents and profits without accounting or offering to account, are circumstances indicating an adverse holding, and their effect upon the co-tenant is the same as if notice were directly communicated to him. The means of knowledge being furnished by the open and notorious character of the possession, he is chargeable with actual notice.

ID. — REQUESTING A DEED FROM THE CO-TENANT — EFFECT UPON THE CHARACTER
OF THE POSSESSION. — If the possession of a tenant in common is adverse to his
co-tenant, it will not lose its hostile character by the former tendering a quit-
claim deed to the latter, and requesting him to sign it, there being no offer to
purchase, nor any acknowledgment of the tenancy.

APPEAL from a judgment of the Superior Court of the city
and county of San Francisco, and from an order refusing a new
trial.

The facts are stated in the opinion of the court.

*Mastick, Belcher & Mastick*, and *Roche & Desbeck*, for Appel-
lants.

1. A conveyance by one co-tenant, purporting to convey an
estate in severalty, constitutes color of title, and when the
grantee enters under the deed and claims title in himself, and to
the exclusion of all other right, his entry is under color of title,
and his possession is adverse to all the world, and will, if main-
tained for the statutory period, toll all other right, and will vest
in him a perfect title. (*Prescott* v. *Nevers*, 4 Mason, 330;
*Bradstreet* v. *Huntington*, 5 Peters, 442; *Clymer's Lessee* v.
*Dawkins*, 3 How. 674, 689; *Ricard* v. *Williams*, 7 Wheat. 59,
120; *Thomas* v. *Pickering*, 13 Me. 337; *Higbee* v. *Rice*, 5
Mass. 352; *Marcy* v. *Marcy*, 6 Met. 371; *Rickard* v. *Rickard*,
13 Pick. 251; *Bigelow* v. *Jones*, 10 Pick. 161; *Parker* v.
*Prop'rs etc.* 3 Met. 91; *Kittredge* v. *Prop'rs etc.* 17 Pick. 246;
*Hodges* v. *Eddy*, 38 Vt. 327; *Forest* v. *Jackson*, 56 N. H. 357;
*Clark* v. *Vaughan*, 3 Conn. 191; *Clapp* v. *Bromagham*, 9
Cowen, 530; *Bogardus* v. *Trinity Church*, 4 Paige, 178; *Jackson*
v. *Smith*, 13 Johns. 406; *Foulke* v. *Bond*, 41 N. J. L. 527;
*Culler* v. *Motzer*, 13 Serg. & R. 356; *Lodge* v. *Patterson*, 3
Watts, 74; *Mehaffy* v. *Dobbs*, 9 Watts, 363; *Law* v. *Patterson*,
1 Watts & S. 184, 191; *Frederick* v. *Gray*, 10 Serg. & R. 182;
*Dikeman* v. *Parrish*, 6 Pa. St. 210, 225; *Caperton* v. *Gregory*, 11
Gratt. 508; *Black* v. *Lindsay*, Busb. 467; *Covington* v. *Stewart*,
77 N. C. 148; *Thomas* v. *Garvan*, 4 Dev. 223; *Cloud* v.
*Webb*, 4 Dev. 290; *Gray* v. *Bates*, 3 Strob. 500; *Hart* v. *Bost-
wick*, 14 Fla. 177; *Horne* v. *Howell*, 46 Ga. 9; *Cain* v. *Furlow*,
47 Ga. 674; *Abercrombie* v. *Baldwin*, 15 Ala. 363; *Alexander*
v. *Kennedy*, 19 Tex. 488, 496; *Abernathie* v. *Con. Virginia*

*M. Co.* 16 Nev. 260; *Ashley* v. *Rector,* 20 Ark. 359; *Weisinger* v. *Murphy,* 2 Head, 674, 679; *Gillaspie* v. *Osburn,* 3 Marsh. A. K. 77; *Gill* v. *Fauntleroy's Heirs,* 8 Mon. B. 177, 186; *Warfield* v. *Lindell,* 30 Mo. 272; *Long* v. *Stapp,* 49 Mo. 506; *Nelson* v. *Davis,* 35 Ind. 474; *Goewey* v. *Urig,* 18 Ill. 238; *Hinkley* v. *Green,* 52 Ill. 223; *Sands* v. *Davis,* 40 Mich. 14; *Campau* v. *Dubois,* 39 Mich. 274; *Hovenden* v. *Lord Annesley,* 2 Schoales & L. 628; *Doe* v. *Prosser,* Cowp. 217; *Townsend & Pastor's Case,* 4 Leon. 52; *Reed* v. *Taylor,* 5 Barn. & Adol. 575.)

2. To constitute possession by one co-tenant adverse to the rights of his co-tenants, it must be taken and maintained under a claim of exclusive ownership, indicated and exhibited by open and notorious acts; and whenever it is so taken and maintained, the co-tenants are bound to take notice of the fact, and the statute will run against them whether they have actual notice or not. (*Lodge* v. *Patterson,* 3 Watts, 74; *Dikeman* v. *Parrish,* 6 Pa. St. 225; *Warfield* v. *Lindell,* 30 Mo. 272; *Same* v. *Same,* 38 Mo. 561; *Lapeyre* v. *Paul,* 47 Mo. 590; *Abercrombie* v. *Baldwin,* 15 Ala. 371; *Clymer's Lessee* v. *Dawkins,* 3 How. 674.)

3. One in possession of land and claiming to own it may buy in outstanding claims of title, without abandoning or impairing his own title, or even acknowledging the validity of the title so bought. (*Jackson* v. *Given,* 8 Johns. 137; *Jackson* v. *Smith,* 13 Johns. 406; *Northrop* v. *Wright,* 7 Hill, 476, 490; *Parker* v. *Proprietors etc.* 3 Met. 91, 102; *Caperton* v. *Gregory,* 11 Gratt. 505; *Lodge* v. *Patterson,* 3 Watts, 74; *Blight's Lessee* v. *Rochester,* 7 Wheat. 535, 548; *Cannon* v. *Stockmon,* 36 Cal. 535.)

*Wm. H. Sharp,* for Respondent.

1. The possession of one tenant in common is the possession of all the co-tenants. (*Colman* v. *Clements,* 23 Cal. 245; *Carpentier* v. *Webster,* 27 Cal. 524; *Miller* v. *Myers,* 46 Cal. 535; *Owen* v. *Morton,* 24 Cal. 373.)

2. Neither giving a deed of the whole land nor exclusive possession by one tenant in common is an ouster in this State. (*Seaton* v. *Son,* 32 Cal. 481; *Gates* v. *Salmon,* 35 Cal. 576; *Bornheimer* v. *Baldwin,* 42 Cal. 27; *Owen* v. *Morton,* 24 Cal. 387; *Carpentier* v. *Mendenhall,* 28 Cal. 484; *Williams* v. *Sut-*

*ton,* 43 Cal. 65; *Aguirre* v. *Alexander,* 58 Cal. 28, 29; *Miller* v. *Myers,* 46 Cal. 535; *Packard* v. *Johnson,* 57 Cal. 180.)

3. Asking the co-tenant for a deed was a recognition of his title.

THORNTON J. — This is an action to recover possession of an undivided half of a lot of land situate in the city and county of San Francisco, to which the Statute of Limitations was pleaded. The court held against the defendants on this plea, and judgment passed for plaintiff. The defendants moved for a new trial, which was denied. One of the grounds on which this motion was denied was the insufficiency of the evidence to sustain the finding on the issue joined on the plea of the statute above mentioned.

The findings of fact, so far as they are adverted to or necessary to be remarked on herein, are as follows: —

"1. That one Frederick S. Sproul, on the 1st day of December, in the year 1863, was the owner in fee and in possession of the lot of land described in the complaint in this action.

"2. That said Frederick S. Sproul and Phebe C., his wife, on the 27th day of February, in the year 1865, granted, bargained and sold said premises to James Brokaw and J. W. Metcalf, by deed duly recorded on the same day, who entered into the possession of said premises under said deed.

"3. That said Frederick S. Sproul, Phebe C. Sproul, his wife, and James Brokaw, on the 2d day of January, in the year 1867, granted, bargained, and sold said premises to Thomas Mooney, who entered into the possession of said premises under said deed, and while he held the same paid the city, county, and State taxes levied thereon, added to the improvements thereon, and received the rents and profits thereof.

"4. That said Thomas Mooney, on the 15th day of December, in the year 1868, made a deed of gift of said premises to his wife, Emily Mooney, one of the defendants in this action, which deed was duly recorded on said last named day. That said defendant entered into possession of said premises under said deed, and has ever since held the possession thereof by herself or tenants, and received the rents and profits thereof, and paid the city, county, and State taxes imposed thereon.

"5. That said J. W. Metcalf, on the 13th day of November, in the year 1880, by deed duly acknowledged and recorded, granted, bargained and sold the undivided one half of the premises described in said complaint to the plaintiff.

"6. That the defendants, on the 4th day of March, in the year 1881, ousted the plaintiff, and denied his title to the premises described in said complaint, and in and to every part thereof."

The court, it will be observed, finds that the plaintiff was ousted or disseized on the 4th day of March, 1881. The denial of the title, also found, is either a mere evidential or probative fact, having no proper place in a finding of facts, or, if it has, is of the same purport with the fact of ouster previously found. In this latter view, it is a mere repetition of the finding of ouster, and need not be further noticed.

It is contended that the evidence shows that the disseizin or ouster of plaintiff by defendants was at a much earlier day; in fact, that the testimony establishes that the ouster occurred on the entry of Thomas Mooney under the deed executed to him on the 2d day of January, 1867 (see finding three), by Sproul and wife and Brokaw.

To set the Statute of Limitations in motion there must be a hostile possession, open and notorious or accompanied by such circumstances as are calculated to make it notorious. (*Grimm* v. *Curley*, 43 Cal. 251; *Thompson* v. *Pioche*, 44 Cal. 508.) This accords with the definition of disseizin, which Blackstone defines to be "a wrongful putting out of him who hath the freehold." (3 Blackst. Com. 169 — and so, Littleton and Coke.) The definition of the former is "where a man entereth into any lands or tenements where his entrance is not congeable and ousteth him who hath the freehold." (Co. Litt. 279.) Coke defines it as "the putting a man out of possession, and ever implieth a wrong." (Co. Litt. 153.) It must be with intent to usurp the place of the true owner, and put him out of possession. Lord Mansfield in *Taylor dem. Atkyns* v. *Horde*, said that disseizin at common law "signified some mode or other of turning the tenant out of his tenure, and usurping his place and feudal relation," from which it followed, that if the disseizor died seized, the descent to his heir gave him the right of posses-

sion and tolled or took away the true owner's entry. (*Taylor* v. *Horde*, 1 Burr. 60.) This was said of actual disseizins, or disseizins in spite of the owner, and not of disseizins at the election of the owner, which were allowed to the owner for the sake of the remedy by *assize of novel disseizin*. This actual disseizin is the species of ouster or dispossession by reference to which adverse possession is defined and illustrated. The last class of disseizins above mentioned need not be further noticed.

In fine, we think that the authorities justify our saying that every dispossession of the true owner, whether by force or fraud, by violent or peaceful means, and an open and notorious occupation under claim of title in the person who disposesses, is a disseizin or ouster (disseizin is but a species of ouster, see 2 Blackst. Com.) sufficient to set in motion the Statute of Limitations and constitutes an adverse possession, which, when it continues for the period of time prescribed by statute, bars the owner of his right to recover.

Now, the possession of one tenant in common is the possession of his co-tenant. Such possession by one tenant has no element of hostility to the right of his co-tenant. The co-tenant out of possession is not informed by such possession that it has any adverse character. Such a possession under claim of title adverse to the co-tenant, but not manifested to him by the conduct of the possessor of a character to notify the co-tenant of its adverse nature, is not sufficient to set the statute in operation as between tenants in common. The co-tenant must, in some way, be notified of the adverse holding, in order to be prejudiced by it. This may be by actual notice, or by acts or declarations so open and notorious, that it may be inferred that the co-tenant had knowledge of them. This rule and the reason on which it is founded is well stated in *Miller* v. *Myers*, 46 Cal. 539, referring to the tenant out of possession in these words: "But until he has notice either actual or constructive, in some form, that the possession of his co-tenant has become hostile, it will be deemed in law to have been amicable, notwithstanding the tenant in possession may, in fact, have been holding adversely. If the rule were otherwise, the tenant out of possession might be disseized, and lose his remedy by the bar of the Statute of Limitations, without notice that the possession of his co-tenant had

become hostile. To avoid this injustice, the law deems the possession to have continued amicable until the tenant out of possession has in some method been notified that it has become hostile."

The adverse character of the possession must in every case be manifested to the owner. The owner must be notified, in some way, that the possession is hostile to his claim, or the statute does not operate on his right. (See remarks, in opinion, in *Thompson* v. *Pioche*, 44 Cal. 517, 518; *Trustees etc. Town of Fort Hampton* v. *Kirk*, 84 N. Y. 220; *Culver* v. *Rhodes*, 87 N. Y. 354; *Abell* v. *Harris*, 11 Gill & J. 371, per Dorsey, J.) As was said in the case cited from 84 N. Y., per Andrews, J., "the object of the statute defining the acts essential to constitute an adverse possession is, that the real owner may, by unequivocal acts of the disseizor, have notice of the hostile claim and be thereby called upon to assert his legal title." Hence, an open and notorious occupation with hostile intent is a necessary constituent of an adverse possession. Neither a hostile intent without such occupation, nor such occupation without hostile intent, is sufficient. The case of tenants in common is no exception to this rule. The evidence required is of a different character, from the legal character of the tenure, tenants in common being seized *per my et per out* and the actual occupation of one tenant of the entire tract having no element of hostility to his co-tenant. Such occupation with user of the land for husbandry or of any kind is reconcilable with right, and in harmony with the legal aspects of the tenure. Hence there must be some conduct of the occupying tenant evidenced by acts or declarations, or both, in its nature and essence hostile to the title of the tenant out of possession, and imparting knowledge of such hostility to the latter, to affect his right. (*Portis* v. *Hill*, 3 Tex. 278.)

The important question here is, does the evidence show an ouster prior to the date at which it is found, and an adverse possession of sufficient duration to bar the plaintiff's action?

The facts found are set forth above, together with the further fact not proved, that Emily Mooney paid the taxes during the whole time she was in possession. We do not say this payment of taxes was proved, because the bill of exceptions shows that the offer was made to prove it, and it was ruled out, except as

to the fact of payment since March, 1878, when the proviso to section 325 of the Code of Civil Procedure went into operation. The payment of taxes, *it seems*, is, under the circumstances of this case, competent evidence along with the other facts admitted to show the character of the holding by the party in possession, that it was adverse and under claim of title. (*Keyser* v. *Evans*, 30 Pa. St. 509.)

The evidence shows the entry by Thomas Mooney under a deed executed to him by Sproul and wife, and Brokaw, conveying the whole premises, which deed was duly recorded soon after its execution. This is strong evidence of an *ouster* or disseizin. It bears the appearance of a declaration by the grantee that his entry under the deed is for himself exclusively and not for another, that he enters in his own exclusive right. In *Prescott* v. *Nevers*, 4 Mason, 330, Judge Story, in discussing the subject of the ouster of one tenant in common by another, used this language: "I take the principle of law to be clear, that where a person enters into land by a recorded deed, his entry and possession are referred to such title; and that he is deemed to have a seizin of the land co-extensive with the boundaries stated in his deed, where there is no open adverse possession of the land so described in any other person." This was said in 1827. Afterwards, at the January Term, 1845, of the Supreme Court of the United States, the same learned jurist delivering the opinion of the court in *Clymer's Lessee* v. *Dawkins*, 3 How. 690, expressed himself thus: "In the case of the *Lessee of Clarke* v. *Courtney*, 5 Peters, 319, 354, this court also held, that when a person enters into land under a deed or title, his possession (in the absence of all other qualifying or controlling circumstances) is construed to be co-extensive with his deed or title; and although the deed or title may turn out to be defective or void, yet the true owner will be deemed *disseized* to the extent of the boundaries of such deed or title." The learned justice cites several other cases "affirming the same doctrine," viz: *Green* v. *Liter*, 8 Cranch, 229, 230; *Barr* v. *Gratz*, 4 Wheat. 213, 223; *The Society for Propagating the Gospel* v. *The Town of Pawlet*, 4 Peters, 480, 504, 506; *Blight's Lessees* v. *Rochester*, 7 Wheat. 535. See also, *Bradstreet* v. *Huntington*, 5 Peters, 439; *Clapp* v. *Bromagham*, 9 Cowen, 531, 532, 533; *Cul-*

*ler* v. *Motzer,* 13 Serg. & R. 358; *Wright* v. *Saddler,* 20 N. Y. 329, 330; *Alexander* v. *Kennedy,* 19 Tex. 496.

In *Culler* v. *Motzer,* 13 Serg. & R. 358, it was held where the very point was in judgment that possession of land by a purchaser, under deed of an entire lot, is adverse to the rightful owner, though tenant in common with the grantor. There are numerous other cases to the same effect. (*Horne* v. *Howell,* 46 Ga. 9; *Cain* v. *Furlow,* 47 Ga. 674; *Gill* v. *Fauntleroy's Heirs,* 8 Mon. B. 186; *Long* v. *Stapp,* 49 Mo. 508; *Warfield* v. *Lindell,* 30 Mo. 282; S. C. 38 Mo. 578; *Lapeyre* v. *Paul,* 47 Mo. 590; *Gray* v. *Bates,* 3 Strob. 500; *Bogardus* v. *Trinity Church,* 4 Paige, 178; *Bigelow* v. *Jones,* 10 Pick. 162; *Goewey* v. *Urig,* 15 Ill. 242; *Hinkley* v. *Green,* 52 Ill. 230–233; *Townsend & Pastor's Case,* 4 Leon. 32; *Reed* v. *Taylor,* 5 Barn. & Adol. 575; *Parker* v. *The Proprietors etc.* 3 Met. 101; *Thomas* v. *Garvan,* 4 Dev. 223; *Cloud* v. *Webb,* 4 Dev. 290; *Hubbard* v. *Wood,* 1 Sneed, 286; *Weisinger* v. *Murphy,* 2 Head, 674; *Kinney* v. *Slattery,* 51 Iowa, 353; *Abernathie* v. *Con. Virginia Mining Co.* 16 Nev. 260; *Caperton* v. *Gregory,* 11 Gratt. 505.)

The deed to Mooney (its character is stated above) was recorded and Mooney entered under it into a lot within the city of San Francisco, described in the complaint as being twenty-three by ninety feet. The evidence on the part of the defendants, in regard to the adverse possession, is that of Mrs. Mooney, and is as follows: "I took possession of the property in December, 1868. When my husband made me a deed of gift of it, my husband and I lived there. At first, when he bought the property it was a four-roomed house. He and I lived there for about six or eight months, and then we let it to a newly married couple. When they left the house, my husband had it raised to a two-story house. My husband and myself ceased to live there in 1867. We lived there five or six months. The newly married couple lived there six or seven months. Mr. Wiel and family next lived there. They occupied the premises five or six years. The plaintiff was my next tenant. He remained there three or four years. I have always received the rents of the premises since the time the deed was made to me. Madison & Burke had charge of the place for me. I never accounted to any person for any portion of the

rents or profits. Nobody ever demanded an account of them from me until within the last two or three months. Nobody ever demanded of me to be let into possession of these premises until the demand of Mr. Unger. Mr. Mooney raised the house. It was four-roomed. He raised it to a two-story house, with modern improvements, and I have always kept it in repair, paid taxes, assessments, and everything. The lot is surrounded by a fence. The cost of raising the house and putting in the modern improvements must have been eighteen hundred or two thousand dollars. I offered to sell the property. I never acknowledged any claim to any portion of the property on the part of any one else. I have been in possession for a number of years. I have always received the rents and profits. I always thought it was mine, and I believe it is mine now. During all the years since that deed was given to me, I have leased the premises to tenants. Nobody but my tenants and myself has been in possession or occupation of these premises since the deed to me from my husband."

The above, with what has been before stated, is all the testimony on the issue of adverse possession, except one circumstance, which will be adverted to hereafter.

There are five elements required to make out an adverse possession sufficient to constitute a defense under the Statute of Limitations. (1) The possession must be by actual occupation, open and notorious, not clandestine. (*Thompson* v. *Pioche, supra;* Code Civ. Proc. §§ 323, 325.) (2) It must be hostile to the plaintiff's title. (Code Civ. Proc. §§ 321, 322, 323.) (3) It must be held under a claim of title, exclusive of any other right, *as one's own.* (Code Civ. Proc. §§ 322, 323, 325; *Garrison* v. *McGlockley,* 38 Cal. 78; *Lovell* v. *Frost,* 44 Cal. 471; *Thompson* v. *Pioche, supra.*) (4) It must be continuous and uninterrupted for a period of five years prior to the commencement of the action. (Code Civ. Proc. §§ 322, 324; *San Francisco* v. *Fulde,* 37 Cal. 349; *City of San Jose* v. *Trimble,* 41 Cal. 536.) (It may be added here that this period of five years need not be *next* before the commencement of the action. (*Cannon* v. *Stockmon,* 36 Cal. 535.) (5) Since the passage of the proviso to section 325 of the Code of Civil Procedure in 1878, payment of taxes. (*C. P. R. R. Co.* v. *Shackelford,* 63 Cal. 261.)

Each one of these elements is established by the evidence. (1) There was open and notorious occupation by Mrs. Mooney and her husband. Mrs. Mooney and her husband were in possession when the deed was made to the former in December, 1868. They lived there for several months. Mrs. Mooney took possession in December, 1868. Her husband added to the house, raised it to a two-story house. Mrs. Mooney has let the house during this period to several tenants, and a tenant has occupied the house during nearly the whole period. She has made repairs on the house, improved it at a cost of from eighteen hundred dollars to two thousand dollars, received the rents of the property, paid taxes and assessments, has never accounted to any one, and no one ever demanded an account or to be let into possession until within a short time before the suit was brought. The deeds under which she claims, and herself and her husband entered, were recorded soon after made. Her acts of ownership, and those of her husband, were unequivocal and open to the observation of all, and during this period, Metcalf, the alleged tenant in common, lived near enough to the city to have reached it in less than twelve hours, and had full opportunity of observing the condition of the lot, the change of possession from Brokaw, his co-tenant, so-called, or that a person other than Brokaw was in possession, its occupation by tenants, and of ascertaining all the above-mentioned facts, which facts a man ordinarily regardful of his interests would have made himself acquainted with. The possession of other persons than Brokaw was enough to put Metcalf on inquiry, according to the rule in *Fair* v. *Stevenot*, 29 Cal. 486. If he had inquired he would have discovered the hostile character of the possession. This means of notice constituted notice. (See *Smith* v. *Yule*, 31 Cal. 184; *Pell* v. *McElroy*, 36 Cal. 272.) (2) The hostility of the plaintiff's claim of title is evident from the above facts, for the character of the possession may be evidenced by acts as well as words. Independent of the entry of Mooney and wife under the deeds of the whole lot, such acts indicate the adverse character of the holding. With the deeds, we cannot see that there can be any doubt about it. Mrs. Mooney testified, she always thought it was her property, and never acknowledged any claim to any

portion of the property on the part of any one else.   Her acts accord with and support this testimony.   (3) The above facts show that Mrs. Mooney occupied and possessed the property under a claim of title exclusive of any other right; (4) and also that the evidence conclusively established that this adverse possession continued for a period sufficiently long, prior to action brought, say five years, to bar plaintiff's action; and (5) that she paid the taxes.

The evidence as to these points is all one way.   The fact that she presented a deed to Metcalf and requested him to sign it does not rebut any of the deductions above made from the evidence.   Metcalf and Mrs. Mooney alone testify as to this matter.   Metcalf says she presented a deed and requested him to sign it; he does not state the character of the deed.   But there is no evidence that she ever offered to buy anything.   Mrs. Mooney says that the deed presented to Metcalf was a *quit-claim.*   These facts do not sustain the conclusion that the case here made is within the decision of *Lovell* v. *Frost,* 44 Cal. 471; and *C. P. R. R. Co.* v. *Mead,* 63 Cal. 112.

There was no offer to purchase the property or to purchase anything, but the testimony shows that it was an effort by the defendant to get in an outstanding or adverse claim of title, called to her attention by an objection made to her title when she was negotiating a sale of the lot.   This she had a right to do, and doing it was no recognition of the plaintiff's claim so as to do away with the effect of her hostile occupation.   On the contrary, the facts proved point strongly to the conclusion that she asked for a deed which was rightfully her due from one who had no title; that Metcalf's name was inserted in the deed of Sproul and wife to himself and Brokaw as a merely nominal owner, to hold the title for the grantors of Thomas Mooney, Sproul and wife, and Brokaw.

This will explain the facts that though living in the neighborhood of the city of San Francisco during the whole time of Mrs. Mooney's occupation, he (Metcalf) paid no attention to the property, never asked for a portion of the rents, made no inquiry about the property, and had forgotten that he had any interest in it.

We are referred to the case of *Seaton* v. *Son,* 32 Cal. 483,

Whether the possession was adverse or not is certainly, in the case before us, a question of fact to be determined upon a view of all the circumstances appearing in the evidence. In *Taylor* v. *Horde*, 1 Burr. 60, Lord Mansfield said: "Disseizin is a fact to be found by the jury." That such is the general rule as to whether a possession was adverse or not to the owner's title, see the cases cited in note 2 to § 258 of Wood's Lim. of Actions. It is not necessary for us to overrule the case referred to, but we feel bound to say that in our opinion the ruling in it as to the deed to Brophy, and his entry and possession under it, is overborne by the weight and current of authority, and is not in accordance with the well-settled principles on which the question of adverse possession has been adjudged in nearly every case to which our attention has been called or which we have been able to find. The cases are cited above.

The finding as to the issue made by the Statute of Limitations in this case is scarcely in accordance with that definiteness and certainty which should characterize a finding of facts. (See sixth finding quoted above.) In finding an adverse possession it would be well to find the elements above given. If one of the elements is lacking, the adverse possession is not made out, and in finding such an issue for the plaintiff it is sufficient to negative the existence of any one of these elements.

Judgment and order reversed and cause remanded for a new trial.

MYRICK, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.