[Civ. No. 2006.   Third Appellate District.—September 19, 1919.]

RAYMOND J. TURNER et al., Appellants, v. F. E. BUSH
et al., Respondents.

[1] WATERS AND WATER RIGHTS — TITLE BY PRESCRIPTION — BURDEN
OF PROOF—FINDINGS—EVIDENCE—APPEAL.—The rule that the bur-
den is upon the party who claims certain water rights by pre-
scription to clearly prove by competent evidence all of the ele-
ments essential to such title is especially for the guidance of the
trial court.  If there is any substantial evidence in the record on
appeal from which a rational inference may be drawn that the
various elements of prescriptive right exist, the appellate court is
bound by the findings of the trial court.

[2] ID.—CASE AT BAR — TITLE BY PRESCRIPTION — CONCLUSIONS OF
TRIAL COURT—LEGAL JUSTIFICATION FOR.—In this action brought
to secure a permanent injunction to prevent the defendants from
using or from interfering with the use by plaintiffs of one-third
of the waters of a certain creek, there was legal justification for
the conclusion that defendants and their predecessors in interest
used all the water continuously, openly, and under a claim of
right for at least five years and, therefore, acquired a title by
prescription.

APPEAL from a judgment of the Superior Court of
Modoc County, and from an order denying a new trial.
Clarence N. Raker, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Sharp & Henderson, Dodge & Barry and N. J. Barry for
Appellants.

Daly B. Robnett for Respondents.

BURNETT, J.—The action was brought to secure a perma-
nent injunction to prevent the defendants from using or
from interfering with the use by plaintiffs of one-third of the
waters of a certain South Deep Creek, which is a natural
stream of water in Surprise Valley, Modoc County.   Plain-
tiffs based their claim upon an alleged prior appropriation

2.  Essentials of title to water by prescription, note, 93 Am. St.
Rep. 719.

by the patentee of their lands, one Jacob F. Bittner, and in a separate count set up the claim of title by prescription. Defendants answered separately and denied all the material allegations of the complaint except the ownership of the lands by plaintiffs, and they filed a cross-complaint in which they claimed all the waters of said creek, first by virtue of prior appropriations, second by adverse user for the prescriptive period of five years, and defendant Bush made a further claim to said waters of said stream as riparian proprietor. Judgment was for defendants and the appeal is by plaintiffs from said judgment and from the order denying their motion for a new trial. There is really no controversy over the Bush claim to one-third of the water, the evidence all showing that he was and is entitled to it, and, therefore, concededly, the judgment as to him must be affirmed. The only dispute is as to the two-thirds of the water claimed by defendant K. M. Lester, plaintiffs insisting that they are entitled to one-half of that two-thirds, it being admitted by them that said defendant owns and is entitled to the use of the other one-half, or one-third of the whole flow. There was no evidence of any appropriation of any of the water by said Jacob F. Bittner, so that it may be said there was a failure of proof as to this allegation of the complaint. It appeared, however, that for more than thirty years prior to March 15, 1912, all the lands involved herein and all the waters of said creek were owned and used by one Christopher T. Sharp. There is evidence that said Sharp used and appropriated said water equally for the irrigation of said three tracts, and, hence, the contention is made by appellants that one-third of said flow became appurtenant to the land now belonging to plaintiffs and passed with the deed to George Turner and Sallie C. Turner executed by said Sharp on said March 15, 1912, and thereafter to plaintiffs through the deed executed to them by said George Turner and Sallie C. Turner on the first day of May, 1915. This is the theory upon which plaintiffs relied in the court below. In that respect there was a departure from the scheme of the complaint, but no objection was made to the course pursued and it cannot be urged now as a sufficient reason for the affirmance of the judgment. In opposition to this claim of plaintiffs it was the contention of defendants, especially defendant Lester, that Sharp reserved the water right attached to the land conveyed to plaintiffs' pre-

decessors in interest, and transferred the entire water right in and to the use of said stream to the defendants or their grantors. This claim was and is based upon the peculiar language of the deeds executed by Sharp to the respective parties on said March 15, 1912, and also certain parol evidence of the intention of the parties, which was allowed over the objection of appellants. It may be said that it is at least questionable whether the lower court's ruling as to the admissibility of this evidence was correct, and also whether there is sufficient competent evidence to support the finding of the court that ''said Jacob F. Bittner did not, nor did any other grantor of plaintiffs, ever divert from said stream into any ditch by means of any dam, or otherwise, or by means of any ditch, or otherwise, convey an amount of water equal to one-third of the greatest flow of the waters of said stream, or convey any amount of the waters of said stream to or upon the above described lands of plaintiffs.'' We think, though, that we may forego the consideration of these and some other questions discussed by counsel. We reach this conclusion by virtue of the fact that the court found that defendants have acquired a title by prescription to all the waters, and that there is sufficient evidence, as we are required to view it, to support said finding. It will not be disputed that this finding in connection with the undisputed facts is sufficient upon which to base the judgment and that, if supported, it renders immaterial other findings to which objection is made.

[1] In considering the sufficiency of the evidence to support said finding we are not unmindful of the rule as thus stated in *Clarke* v. *Clarke*, 133 Cal. 667, [66 Pac. 10]: ''The burden is upon the party who claims by prescription to clearly prove by competent evidence all of the elements essential to such title. The user must have been adverse to the true owner and hostile to his title. It must have been actual, continued, open, and under a claim of right. It must have all the elements necessary to acquire title by adverse possession . . . It must, in some way, be asserted in such manner that the owners may know of the claim.'' But that rule is especially for the guidance of the trial court. The principle which controls us is that if there is any substantial evidence in the record from which a rational inference may be drawn that said elements of prescriptive right exist,

then this court as an appellate tribunal is bound by the finding of the trial court.

It is also to be remembered that the initiation of the "adverse possession" could not be earlier than March 15, 1912, nor could it continue beyond the month of June, 1917, that being the time when this controversy over the ownership of the water arose. But as seen this period covers more than five years.

[2] With these preliminary observations, we herewith set out the principal evidence upon which is based the claim of title by prescription.

One W. A. Mickle, who was the immediate predecessor in interest of defendant K. M. Lester as to a portion of her lands and who managed the lands which Mr. Bush then owned and afterward sold to Miss Lester, testified in part as follows: "From March 15, 1912, I continued to own the land until about the first of April, I think it was 1917. I occupied the land from March 15, 1912, to April, 1917. During that time I was familiar with the Bittner Pre-emption. In 1912 Stewart had it leased. George Turner, I think, was the owner of it. From 1912 until 1917 I used water on the land that was conveyed to me. I got the water from South Deep Creek. I used it continuously, for the purpose of irrigating alfalfa, grain, garden, and orchard. The waters were necessary for the watering of crops on the land. I am familiar with the Sharp Pre-emption. During the time that I had charge of the land, I had charge of the portion of the Sharp Pre-emption that Mr. Bush had purchased and I used a portion of the water of South Deep Creek on that land. *My use was open.* Whenever I wanted water I took it. I do not think anyone was living on the Bittner land [land of plaintiffs] the first year. Mr. Stewart was living on the adjoining land and had it leased. During the year 1912 neither Stewart nor Turner used any water on the Bittner land from South Deep Creek to my knowledge. The ditch that they used to take the water to the Bittner tract is not far from my house and I had occasion to cross the ditch frequently and I crossed the ditch occasionally and observed it and they used water through that ditch that season. I cannot give the exact date but *it was early in the spring, shortly after I moved on the place.* I think John Stewart turned the water into the ditch. Prior to the water being turned into the ditch I had a con-

versation with Mr. George Turner, who was then owner of the Bittner land. *He came to my place and asked me if I would go with him up to Mr. Stewart's place and tell him to turn the water from South Deep Creek down through that place, as he wanted to take the water to what was known as the big Turner ranch.* He had just sold that ranch to Mr. Alvord, and he wanted the water on it in order to make a good showing on that place. *I told him that I was not using the water and that we would both go up there, and then we went to Mr. Stewart and told him to take the water and run it down there, which he did.* I cannot tell exactly how long the water ran down there because I was busy. I had plowing to do and I could not use the water. *It might have run down there a week or two weeks. When I got my plowing done I took the water and irrigated my alfalfa and grain. I turned all of the water off of the Turner* ranch and used it on the land I had leased from Mr. Bush and on the land I owned. . . . *I used all the water* from South Deep Creek except the one-third that went to the Dodson lands [lands of defendant Bush] *continuously on the lands described in the deed to me and the deed to Mr. Bush from 1912 to 1917, without interference or interruption by anyone.* . . . During the time I was farming the Sharp land I bought, and that which Bush bought, I used all the water in South Deep Creek on those lands, except one-third that went to the Dodson place, and *I used it continuously, openly, notoriously and under claim of right. No one interfered with me, except through my permission and I asked no one's permission to use it."* The foregoing would justify the trial court's finding under the doctrine of *Gurnsey* v. *Antelope Creek etc. Co.,* 6 Cal. App. 387, [92 Pac. 326] ; *Silva* v. *Hawn,* 10 Cal. App. 544, [102 Pac. 952] ; *Hesperia etc.* v. *Rogers,* 83 Cal. 10, [23 Pac. 196], and many other decisions.

It is true that in the cross-examination of the witness he qualified his testimony by stating that it did not apply to the year 1917, so that, if there were no other testimony of a similar nature extending over a sufficient period in 1917 to complete the five years, it might be said that the time was too short. But one A. K. Sweet testified, among other things, as follows: "During the year 1917 I have been running the land formerly owned by Bush and now by Miss Lester, and I have used water from South Deep Creek this year. Had

two-thirds of it, as near as I could guess, and Hussa took over the other one-third for the Bush lands, that is, the Dodson land. Raymond Turner was using water from South Deep Creek this year some time about the first of June. I think it was the first day of June it was turned on. I turned it all away." W. A. Hussa testified that for three years he had been living on the Dodson land and "during the times that I have been there Mickle took two-thirds of the water and I took one-third. He took two-thirds of the water to his place and the Bush place and I took the other one-third to the Dodson place."

We may add that there is further evidence in the record that the use of said water by plaintiffs was permissive and that defendants used it as if it belonged to them, and since there is no controversy as to the payment of the taxes, we are satisfied that there is legal justification for the conclusion that defendants and their predecessors in interest used all the water continuously, openly, and under a claim of right for at least five years and, therefore, acquired a title by prescription.

The judgment and order are, therefore, affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 17, 1919.

All the Justices, except Olney, J., concurred.