[No. 2352]

# JOHN W. O'BANION AND A. W. GANDER, RESPONDENTS, *v.* DANIEL C. SIMPSON, APPELLANT.

[191 Pac. 1083]

1. JURY—LEGISLATURE CAN REGULATE MANNER OF ENFORCING RIGHT TO JURY TRIAL.

   Under Const. art. 1, sec. 3, guaranteeing right of trial by jury, but providing that it may be waived by the parties in the manner to be prescribed by law, the legislature can regulate the manner in which the constitutional right may be secured and enforced.

2. JURY — STATUTE, MAKING FAILURE TO DEMAND JURY BEFORE SETTING FOR TRIAL A WAIVER, IS REASONABLE.

   The provision of Rev. Laws, 5226, that right to jury trial is waived by failing to demand it before the cause is set for trial is a reasonable regulation of the right to trial by jury, and is therefore valid under Const. art. 1, sec. 3.

3. TENANCY IN COMMON—CONVEYANCE BY COTENANT AND EXCLUSIVE POSSESSION BY GRANTEE IS OUSTER.

   Where one cotenant executes a deed purporting to convey entire interest in the property described by metes and bounds, and the grantee takes exclusive possession of the property under the deed, there is an ouster of the other tenants, which at the expiration of the statutory period will ripen into title to the entire premises.

4. ADVERSE POSSESSION—POSSESSION BY EITHER PARTY AFTER THE CONTROVERSY AROSE WILL BE DISREGARDED.

   In a suit to quiet title under claim by adverse possession, evidence of acts of possession of the premises by either party, after the controversy regarding the ownership thereof arose, will be disregarded.

5. TENANCY IN COMMON — POSSESSION BY GRANTEE OF ENTIRE INTEREST FROM COTENANT IS NOT POSSESSION OF OTHER COTENANTS.

   There is no presumption that a grantee, under a grant from a cotenant purporting to convey the entire interest, held possession as a cotenant, but such possession, if exclusive of the other tenants, is presumed to be coextensive with the deed and adverse to them.

6. APPEAL AND ERROR — JUDGMENT AFTER TRIAL TO COURT NOT REVERSED FOR EVIDENCE ADMITTED CONDITIONALLY.

   A judgment in an action to quiet title will not be reversed for the admission of evidence relating to the possession of another tract of land not in controversy, but used in connection with the tract in controversy, where the court stated he had admitted such evidence merely for what it might be worth in considering the ultimate conclusions of the case.

Points decided

7. ADVERSE POSSESSION—POSSESSION OF GRAZING LAND HELD NOT
CONSTRUCTIVE.
Where the land in controversy was useful only for grazing
purposes, and was part of an inclosed tract owned by several
owners who grazed their cattle indiscriminately thereon, pos-
session by a grantee of the tract in controversy by grazing his
cattle on such tract under care of a herder to confine them to
that tract was not constructive possession merely, but was
actual.

8. ADVERSE POSSESSION—NEED NOT BE POSSESSION DURING PERIOD
PRECEDING COMMENCEMENT OF ACTION.
To sustain a title by five years' adverse possession under
Rev. Laws, 4953, the five-year period of possession need not be
the five years immediately preceding the commencement of the
action.

9. ADVERSE POSSESSION—NEED NOT CONSIST OF STATUTORY ELEMENT,
WHERE THEY ARE NOT SUITED TO LAND.
Though Rev. Laws, 4957, makes cultivation, improvements,
inclosure, or residence upon the land possession thereof, it is
not necessary for a claimant to land under claim founded on
written instrument to prove any of those elements to establish
adverse possession, where the land was suitable only for graz-
ing land, so that its inclosure, cultivation, or improvement
would not be profitable.

10. ADVERSE POSSESSION—GRAZING OF CATTLE HELD NOT TO DEFEAT
EXCLUSIVE POSSESSION BY PLAINTIFFS.
Where plaintiffs claimed the land under a deed, and were
grazing their cattle thereon under care of a herder, whose
duty it was to prevent the cattle from straying off from the
land, the fact that plaintiffs did not prevent the grazing of
cattle of other owners upon the land does not prevent their
possession from being exclusive.

11. ADVERSE POSSESSION — ACTUAL POSSESSION IS CONSTRUCTIVE
NOTICE TO ALL OF CLAIM OF TITLE.
The actual possession of land and the exercise of the usual
acts of ownership over it is constructive notice to all the world
of the claim of title under which the possessor holds.

12. TENANCY IN . COMMON — PERMITTING CATTLE OF GRANTEE OF
FORMER COOWNER TO GRAZE HELD NOT TO INTERRUPT ADVERSE
POSSESSION. .
Where the grantees of entire interest in grazing lands from
a tenant in common had taken exclusive possession of the
land under their deed, the fact that thereafter they did not
prevent cattle belonging to a grantee from the other original
cotenant from grazing on the land did not interrupt the
adverse character of their possession.

13. APPEAL AND ERROR—TRIAL COURT FINALLY DETERMINES CONTRO-
VERTED QUESTIONS OF FACT.
The determination of the controverted questions of fact
raised by the evidence is for the trial court, not for the supreme
court on appeal.

14. Tenancy in Common — Offer of Settlement with Adverse
    Claimant Held Attempt to Buy Peace, Not Recognition of
    Title.

 An offer of settlement, made by grantees from one cotenant
who had exclusive possession of the land for more than five
years to a grantee of the other cotenant after the land had
been in litigation for some time, was an offer to buy peace, and
not a recognition of the title of the other party.

Coleman, C. J., dissenting.

Appeal from the Eighth Judicial District Court, Lyon
County; *T. C. Hart,* Judge.

Action to quiet title by John W. O'Banion and another
against Daniel C. Simpson. Judgment for plaintiffs,
and defendant appeals from the judgment and from the
order denying his motion for a new trial. **Affirmed.**
**Petition for rehearing denied** (Coleman, C. J., dis-
senting.)

*Mack & Green,* for Appellant:

The court erred in denying appellant's demand for
a jury trial, and in holding that the right to a jury trial
had been waived. "The right of trial by jury shall be
secured to all and remain inviolate forever; but a jury
trial may be waived by the parties in all civil cases in
the manner to be prescribed by law." Const. Nev.,
art. 1, sec. 3. "Every reasonable presumption should
be made against the waiver of the right of trial by jury."
U. S. v. Rathbone, Fed. Cas. No. 16121, 2 Paine, 578;
St. Paul & S. C. R. Co. v. Gardner, 19 Minn. 132; Brad-
ley & Currier Co. v. Herter, 30 N. Y. Supp. 270. "The
right to a trial by jury cannot be waived by implication."
Biggs v. Lloyd, 70 Cal. 447; Smith v. Polack, 2 Cal. 92;
Hinchly v. Machine, 15 N. J. Law, 476.

It was error to admit evidence tending to establish
record title in the plaintiffs to an eighty-acre tract not
directly involved in the action, the purpose of the evi-
dence being to establish a constructive adverse posses-
sion of two hundred nonadjoining acres. The rule under
which a claimant, holding two parcels of land under
color of title derived from the same deed, may occupy

one of them and be deemed in constructive adverse possession of the other at the same time, does not apply where the two parcels are not contiguous. 1 Cyc. 1129; Georgia P. I. & M. Co. v. Holton, 94 Ga. 55; Goff v. Lowe, 32 Ky. L. Rep. 1098; Moses v. Gatliff, 12 S. W. 139; Gulf R. Co. v. Fishing Club, 57 South. 322; Durham C. & C. Co. v. Wingfield, 142 Ga. 725; Sandmeyer v. Dolijsi, 203 S. W. 113; Roper Lumber Co. v. Richmond C. Works, 168 N. C. 344; 2 C. J. 240.

The plaintiffs failed to establish record title to the undivided one-half interest in the two hundred acres in controversy; to establish their claim of title by adverse possession under any of the statutory grounds. The record shows a tenancy in common, a relation that still exists between the parties to this action. 38 Cyc. 6, 21. Entry and possession to prove prescriptive title must be held to have been for the benefit of all of the cotenants. Any doubt must be resolved in favor of the appellant. 1 Cyc. 981, 1000. The elements necessary to constitute adverse possession are defined by the statute. Rev. Laws, 4957.

"The burden is on the plaintiff to establish that he himself has a perfect legal or equitable title, without reference to and regardless of whether defendant's title be valid or invalid." 32 Cyc. 1369; Heney v. Pesoli, 109 Cal. 53; Schroder v. Aden G. M. Co., 144 Cal. 628; Brown v. City, 125 Pac. 785; House v. Ponce, 13 Cal. App. 279.

"Before a tenant in common can rely on an ouster of his cotenants, he must claim the entire title to the land in himself, and must hold the exclusive and adverse possession against every other person, thus repudiating the relation of cotenancy." 38 Cyc. 25.

There is a break of more than five years in the continuity of respondents' possession. "Any break or interruption of the continuity of the possession will be fatal to the claim of the party setting up title by adverse possession." 1 Cyc. 1000.

The offer to purchase appellant's interest in the land

in controversy was a recognition of his title. "There was evidence given on the trial tending to show an offer on the part of defendant to purchase the property from the plaintiff within the period of five years next preceding the commencement of the action. Such an offer, if made, was a clear recognition of plaintiff's title, and a perfect answer to the defendant's claim of adverse possession. C. P. R. R. Co. v. Mead, 63 Cal. 112.

*Platt & Sanford,* for Respondents:

The evidence established actual occupancy and possession of the lands in controversy by the plaintiffs and their predecessors in interest. Where claimants to title hold possession to a portion of the lands through a deed of conveyance, adverse possession established to a portion of said lands constructively establishes adverse possession to the remaining portion. Rev. Laws, 4956; Owsley v. Matson, 104 Pac. 983; Weber v. Clarke, 74 Cal. 16; Christie v. S. V. W. W., 97 Cal. 26; Hicks v. Coleman, 25 Cal. 135; Davis v. Perley, 30 Cal. 839; Walsh v. Hill, 38 Cal. 487; 1 Cyc. 1125; Ellicott v. Pearl, 10 Pet. 412; Gunn v. Bates, 6 Cal. 272; Rose v. Davis, 11 Cal. 133; Baldwin v. Simpson, 12 Cal. 560; Kyle v. Tubbs, 23 Cal. 431; 1 C. J. 235.

It is idle to contend that a claim of adverse possession does not commence until active cultivation of the soil begins. Adverse possession must consistently begin in a case involving title to agricultural lands when an open and notorious hostile claim of adverse possession is asserted by the placing of houses or buildings upon the land, by surveying for the construction of ditches, by pasturing, or by the actual construction of the ditches. "Improvements alone are sufficient if they are in the manner and to the extent usual in the case of similar property." Gray v. Walker, 157 Cal. 361. "If so improved, it is not necessary that it should be either cultivated or inclosed." Daniels v. Gualala M. Co., 77 Cal. 300. "The possession of land may be shown * * * in any way that clearly indicates an exclusive

appropriation by the person claiming to hold the land."
City v. Brown, 63 Or. 418; Andrus v. Smith, 133 Cal.
78; 2 C. J. 54, 55, 56.

By the Court, SANDERS, J.:

This appeal is taken from a judgment in favor of the
plaintiffs and against the defendant, and also from an
order denying the defendant's motion for a new trial.

Counsel for appellant insist that the trial court erred
in denying appellant's demand for a jury trial and in
holding that the appellant, by his failure to demand a
jury at or before the time the case was set for trial,
waived his right to demand a jury. The exceptions to
this ruling are: First, that the defendant was deprived
of his inviolate constitutional right to a jury trial; sec-
ond, that the defendant was not represented in court
when the cause was set for trial, and had no knowledge
or information that the cause would be set on the date
it was set for trial; third, that when a party demands
a jury before the trial takes place and the case is a
proper one for a jury, the court is without power or
authority to deny the demand.

1. Section 3, article 1, of the constitution of this state
provides, *inter alia:*

"The right of trial by jury shall be secured to all
and remain inviolate forever; but a jury trial may be
waived by the parties in all civil cases in the manner to
be prescribed by law."

The language that a "jury trial may be waived by
the parties in all civil cases in the manner to be pre-
scribed by law" leaves the exercise of the right to a
trial by jury to be regulated by legislation. Without
some legislative regulation of it or provision for it, the
right cannot be enjoyed at all. The constitution merely
guarantees the right, and leaves to the legislature the
duty of providing the means and methods by which the
right is to be enforced. Copp v. Henniker, 55 N. H.
179, 20 Am. Rep. 194, 16 Standard Ency. Pr. 862.

The legislature of this state, in prescribing a general

system of practice for the trial of civil cases, has provided by section 284 of the Civil Practice Act (Rev. Laws, 5226), that:

"Trial by jury may be waived by the several parties to an issue of fact in actions arising on contract, or for the recovery of specific real or personal property, with or without damages, and with the assent of the court, in other actions, in the manner following:

"1. By failing to demand the same at or before the time the cause is set for trial or to appear at the trial.

"2. By written consent, in person or by attorney, filed with the clerk.

"3. By oral consent in open court, entered in the minutes."

It is conceded that the cause was set for trial upon the application of plaintiff's counsel without notice to defendant or his counsel; that the defendant did not demand a jury at or before the time the cause was set for trial, but made a formal demand for a jury at the time the cause was called for trial; and it appears from a colloquy which took place between court and counsel that the presiding judge was not informed that the defendant desired a jury until two days before the cause was called for trial, which had been set thirty days prior thereto.

2.   The question for determination is whether the legislature has the power to say that the failure to demand a jury at or before the time the cause is set for trial constitutes a waiver of the right.   Though the right to trial by jury is declared by the constitution to be inviolate, still it is a privilege that may be waived, and it is therefore competent for the legislature to provide the mode in which it may be done, as it may regulate the exercise of any other right.   Springfield Ry. Co. v. Western Ry. Const. Co., 49 Ohio St. 681, 32 N. E. 961.   We are of the opinion that subdivision 1 of the statute just quoted is a reasonable regulation, and not a penalty; that it neither impairs nor limits the

constitutional right to a trial by jury in a proper case. It requires a party to use reasonable diligence in the exercise of his right to have a jury trial. It is not designed for the convenience of the parties or for the advantage of either, but was incorporated into the law to lessen the expense and facilitate the business of courts, and to enable the court to have a jury in attendance when a case comes on for trial. It is not necessary for us to determine whether the provision is mandatory or not. The hardships suggested, that the leading counsel for appellant was unavoidably absent from attendance on court at the date the case was set, and that he had no knowledge that it would be set, or had been set, on the particular date, is without weight. Any general law that regulates rights operates with severity in particular cases. The leading counsel for the defendant is an experienced and able practitioner in the jurisdiction where the case was tried. He undoubtedly knew that the case had been at issue since 1916. Although he may have been unavoidably prevented from being in attendance upon the court at the date of setting, he certainly had ample time before the cause was set to demand a jury. And it is fair to assume that the legislature intended to meet just such situation as is here presented by allowing the party to make his election at any time before the cause is set for trial. Being of the opinion that the provision in question is "clearly a reasonable regulation, with a view to the public interest, of the right of trial by jury, not a violation of any right and within the competency of the legislature," we conclude that the court did not err in refusing the defendant's demand for a jury.

This is an action to quiet title to 200 acres of land situated in Smith Valley, Lyon County. The controversy first arose over the ownership of the property in 1907, when A. W. Gander brought an action in the district court of said county against John W. O'Banion, Jacob E. Cohn, and Daniel C. Simpson, which resulted,

in 1914, in said Gander being adjudged, by this court, to
be the owner, by adverse possession, of 80 acres of the
280 acres of land involved in that controversy, and in
remanding the cause with direction to the lower court
that the action as to the "other land" (meaning the 200
acres here involved) be dismissed or a new trial granted.
Gander v. Simpson, 37 Nev. 1, 134 Pac. 514. The cause
was dismissed on motion of Gander. The present action
was therefore commenced in 1914 by said A. W. Gander
and John W. O'Banion, as plaintiffs, against Daniel C.
Simpson, defendant, to quiet title to the land, described
in their complaint as being the southeast quarter of sec-
tion 36, township 11 north, range 23 east, also lot 1 of
section 1, township 10 north, range 23 east, all M. D.
B. & M., together with the water, water rights, and
privileges thereunto belonging.

The appellant, Daniel C. Simpson, as adverse claimant
to an equal undivided one-half interest in the land
described in the complaint, appeals to this court from
a judgment adjudging and decreeing plaintiffs to be the
owners of the entire property, and perpetually enjoin-
ing defendant from asserting or claiming an interest
therein, and from an order denying and overruling his
motion for a new trial.

The history of the land is that the Occidental Colony
Company, a corporation, was the owner in fee of 5,300
acres of land situate in the counties of Douglas and
Lyon, derived through mesne conveyances from the
original patentees of the United States and the State
of Nevada. In the year 1890 said corporation conveyed
the entire acreage, described according to its legal sub-
divisions, it being surveyed land, to Joseph Neudelman
and Ephraim Friedman.

The plaintiffs at the trial deraigned title from Joseph
Neudelman, and founded their claim of ownership upon
a deed of Joseph Neudelman and Fannie Neudelman, his
wife, to John W. O'Banion and Zadoc Pierce, bearing
date of the 12th day of November, 1901, purporting to
convey, with ample covenants of seizin and warranty

against the claim of all persons, a specific portion of the 5,300 acres as conveyed by said corporation, consisting of 280 acres, described by metes and bounds, excepting, of course, the 80 acres thereof adjudged to Gander in the prior litigation.

The defendant at the trial deraigned title through mesne conveyances from Ephraim Friedman, and founded his claim of ownership to an undivided half of the property in dispute upon a deed of Jacob E. Cohn to Daniel C. Simpson, bearing date of September 3, 1906, purporting to convey an equal undivided one-half of the 5,300 acres of land conveyed by the Occidental Colony Company to Joseph Neudelman and Ephraim Friedman.

3.   Under the statute law concerning conveyances in this state, the deed of the Occidental Colony Company, a corporation, to Joseph Neudelman and Ephraim Friedman created in the grantees a tenancy in common. Rev. Laws, 1055.

The law is well settled here, and elsewhere, that a conveyance to a stranger of the title, by one cotenant, by an instrument purporting to pass the entire title in severalty, or a specific part thereof, by metes and bounds, followed by an entry into the actual, open, and exclusive possession by such stranger under a claim of ownership in severalty is deemed to amount to an ouster of the other cotenant, which if continued for the statutory period (five years) will ripen into good title by adverse possession.   Abernathie v. Con. Va. M. Co., 16 Nev. 260;  7 R. C. L. sec. 48, p. 84;  1 Cyc. 1078;  38 Cyc. 34;  Ann. Cas. 1915c (note) p. 1231.

All the authorities point to the conclusion that a conveyance of one cotenant, purporting to convey the entire property, coupled with possession by the grantee and notice to the cotenant, actual or presumed, or open, hostile, exclusive, and notorious acts of ownership, constitutes adverse possession which may ripen into a valid title by prescription.   38 Cyc. 34.

The complaint in this case is a short-form complaint as in an ordinary action to quiet title.   Much to be

regretted, the only finding in the record is a general one, in the language of the complaint. In the absence of any finding to the contrary, we, from the facts developed at the trial, are warranted in the conclusion that the principles of law above stated govern and control this case, and it will be considered in the light of the law applicable to the subject.

The facts developed at the trial are in substance as follows:

The land in controversy was located within a boundary of approximately 2,000 acres of fenced land in private ownership. Just what proportion of the acreage of the original common estate of 5,300 acres is located within the inclosure, other than the land in controversy, does not clearly appear. The land within the large enclosure was grazing land. It was, by reason of its particular locality and quality, unfit for cultivation or improvement, except in few instances. It appears that by usage, apparently permissive in its origin, all owners of land within the inclosure, who so desired, were allowed to graze the lands in common during the grazing season of the year. During the remainder of the year, with but few exceptions, the lands were entirely unoccupied. It is fair to conclude from the testimony of the witnesses that, because of the shortness of the grazing season and locality and quality of the lands, it was not practicable for one owner to fence against another, and their live stock was allowed to roam and graze at large the entire area, unrestrained and unconfined, without reference to ownership or title. The boundaries of the holdings within the inclosure were not marked or defined in any manner upon the ground. In 1901 the lands were not in the open adverse possession of any person. The evidence tends to show that John W. O'Banion and Zadoc Pierce, well knowing the situation, quality, and condition of the land and the possible use of it by others for grazing purposes during the grazing season, purchased, for value, in 1901, a small segment of the common estate (280 acres) from Joseph Neudelman, for a purpose

different from that for which the lands within the inclosure were occupied and used. They, as evidenced .by their subsequent acts and conduct, visioned the possible reclamation of the particular land. It is fair to assume, from the small acreage and use made of the land, it was not purchased with intent to be used for general grazing purposes in common with owners of lands within the inclosure. The evidence is undisputed that when they entered into possession under their conveyance in 1901, they immediately inclosed 80 acres of their holding, then susceptible of immediate cultivation and improvement. The remainder (200 acres) was not inclosed. It was not susceptible of cultivation or improvement at that time. It was situated approximately a mile away from the 80 acres. It was adaptable at that time only for grazing purposes during the grazing season of the year. O'Banion and Pierce upon entry established a dairy business and erected a dwelling upon the 80 acres, which was occupied by O'Banion.

4. Long after the controversy as to the ownership arose over the identical land here involved between A. W. Gander and Daniel C. Simpson in 1907, the plaintiff Gander constructed a ditch, at least nine miles in length, to convey water upon the premises, and in the year 1912 began its cultivation. We disregard this or any other evidence of either party relating to possession of the particular land after the controversy over the ownership arose. Possession after that date could not be adverse. Turner v. Bush (Cal. App.) 185 Pac. 190. Adverse possession dated from 1901.

From 1901 to 1907 O'Banion continued to reside upon and operate the dairy on the 80 acres, and used and occupied the uninclosed portion, now in dispute, openly and notoriously, as pasturage for at least 200 head of dairy animals, employed in his dairy business, during the grazing season of each year. It is conceded that during the rest of each year, from 1901 to 1907, the particular land was entirely unoccupied. The evidence tends to show that, while pasturing, the dairy animals

were at all times kept in charge of a herder, whose duty it was to confine them, while pasturing, to and upon the land in controversy. A small house was erected upon the premises for the herder's accommodation. It appears that Zadoc Pierce sold his interest in the entire property to A. W. Gander in 1903. The latter mortgaged back to Pierce the land to secure the purchase price, which has not been satisfied. Some confusion exists as to the exact relation between plaintiffs as to how the land is held between them. Counsel complain that the court refused to permit on cross-examination a full disclosure of that relation. The court evidently regarded the matter as immaterial; and, as no prejudicial effect of the ruling is pointed out, we pass the contention without comment.

Plaintiffs subjected the land to their will and dominion by dealing with the property as their individual estate, paid the taxes thereon, and protected their possession of the uninclosed land as far as possible for them to do in its then condition, but did not prevent the defendant's grantor, or the defendant's or others' live stock from roaming and grazing thereon while being pastured by them in the manner stated.

The evidence in rebuttal is that Jacob E. Cohn, defendant's grantor, and others not disclosed, owning lands within the large inclosure, grazed the particular land, in connection with other lands owned by them, during the grazing season of each year. It is admitted that the lands within the inclosure were so used without protest or interference during the grazing season of each year from 1902 to 1907, and that during the rest of each year the lands were entirely unoccupied.

The evidence tends to show that O'Banion offered Simpson, in 1914, $1,000 for his alleged claim or interest in the property, which was refused. It appears that when plaintiffs entered in 1901 the land was not in the open adverse possession of any person or persons. It is not denied that Jacob E. Cohn, defendant's grantor, had actual knowledge that Joseph Neudelman, prior to

his conveyance to O'Banion of the particular land, had dealt with the entire common estate as his individual estate, and the evidence tends to show that he knew that O'Banion and Pierce occupied the land in dispute as their individual estate. The instruments constituting plaintiffs' chain of title were duly recorded. Daniel C. Simpson resided in the vicinity of the land for a period of more than thirty years. He was a brother-in-law of his grantor, and his own testimony tends to show that he was familiar with plaintiffs' acts of ownership and the common usage of the lands within the large inclosure for grazing purposes during the grazing season.

From the foregoing statement of facts counsel for appellant draw several assignments of error:

5. First—That owing to the relation existing between cotenants, that the possession of each is the possession of all, respondents, as grantees under their conveyance, knew, or should have known, the true state of the title; that appellant, claiming under a grant from a cotenant, had the right to assume that respondent's possession under their conveyance was in accordance with his title, and not coextensive with the pretensions of their deed. Mr. Freeman, in his work on Cotenancy, at section 225, commenting upon the authorities supporting this position, states:

"That this argument, to whatever cause attributable, could not have resulted from an examination of the reported adjudications on the subject."

We do not evince surprise that learned counsel for appellant have failed to cite any authorities in support of the proposition. We, therefore, pass the assignment without further notice.

6. Second—The court erred in permitting evidence of the occupancy, cultivation, and improvement of the inclosed noncontiguous 80 acres, adjudged to Gander in the prior litigation, and not involved herein, as tending to establish constructive possession of the uninclosed tracts or parcels, though included in the same conveyance. We do not understand the evidence to have been

admitted or considered by the trial court for any such purpose. In ruling upon this line of testimony the court in each instance safeguarded itself with the statement that the evidence would be admitted for whatever it might be worth when it came to consider its ultimate conclusion upon the whole case.

7. As far as respondents' possession is concerned, it is not necessary to invoke or discuss the rule of constructive possession. Constructive possession was not an issue in the case. We are of the opinion that from the facts developed at the trial the trial court may have properly considered the special use made of the land for pasturage by respondents in connection with the inclosed portion upon which they conducted a dairy business as tending to show that claimants, relying upon a title derived from such a source, actually claimed possession in themselves and exercised acts of ownership and dominion over the land as to inform the cotenant and those claiming under him of the claim of title under which they held, and of the nature and purpose of the possession to which the land was subjected. Foulke v. Bond, 41 N. J. Law, 545.

8. Third — The respondents failed to establish a prescriptive title, in that the evidence of adverse possession, as pointed out by the statute, is not shown to exist. Rev. Laws, 4957. And, also, it is not shown that respondents possessed the land within five years next preceding the commencement of the action. Rev. Laws, 4953. We are of the opinion that the five years of possession required by the statute (Rev. Laws, 4953) before an action for the recovery of real property or its possession can be maintained, does not mean the five years next preceding the commencement of the action. A party who had been in continued, exclusive, adverse possession of the land for five years is entitled to the benefit of the statute of limitations, although the five years are not "next preceding" the commencement of the action. Cannon v. Stockmon, 36 Cal. 541, 95 Am. Dec. 205.

9.   Neither does the exhaustive argument of counsel convince us that, for the purpose of constituting adverse possession, where persons (as here) claim title to land, founded upon a written instrument, it is incumbent upon such persons to adduce proof to show that the land had been cultivated, improved, or protected by a substantial inclosure.   Rev. Laws, 4957.

Since the early cases of Ellicott v. Pearl, 10 Pet. 442, 9 L. Ed. 475, and Ewing v. Burnet, 11 Pet. 41, 9 L. Ed. 624, it has been uniformly held that, in the absence of statute, neither residence, cultivation, improvement, nor inclosure of land is necessary to support actual possession, where neither the situation of the land nor the use to which it is adapted or applied admits of or requires such evidence of ownership.   The cultivation, improvement, inclosure, and the pasturage of land not inclosed is, by the distinct affirmation of the statute, evidence of adverse possession, but the statute does not exclude evidence of possession manifested in some other appropriate manner.   What the consequence would be of a failure of persons claiming title, not founded upon a written instrument, to inclose, cultivate, or improve the land, we are not called upon to inquire.   Rev. Laws, 4959.

The argument that the respondents' occupancy and possession of the property is not shown to be hostile to appellant's title is clearly against the weight of the evidence.   Entry by a grantee holding under a deed of conveyance for the entire estate, or a specific portion thereof, by metes and bounds, containing covenants of seizin and warranty, made by one of the cotenants and duly placed on record, has all the constituent elements of a disseizin at common law.   Co. Litt. b. n. l.

Such a conveyance as that here in question determines the *quo animo* with which entry is made under it, and gives character to the possession after entry made. Foulke v. Bond, supra.   The entry of such grantee cannot be presumed to be that of a cotenant, nor in

subordination to the rights of the cotenancy. Every act of ownership on the part of such grantee after entry must necessarily be adverse to any other part owner. His possession under such circumstances is adverse from its inception. Abernathie v. Con. Va. M. Co., 16 Nev. 270; Freeman on Cotenancy, sec. 224.

It will not be denied that one of the most effective means of proving ouster is by showing the exercise of dominion over the land by the adverse claimant. 1 R. C. L. sec. 15, p. 703.

10. But it is insisted that respondents' occupancy and possession of the particular land for the pasturage of their dairy animals during the grazing season of each year, in charge of a herder, was not exclusive of those claiming under the cotenancy, and therefore there is not sufficient evidence of an ouster and of an adverse possession to support a claim of title by adverse possession.' We concede that the proof on which title by adverse possession rests applies in this as in every case in which title acquired by such means is relied on. It will not be denied that exclusive possession is a necessary and constituent element of adverse possession. But all the authorities agree that "exclusive possession" means that the claimant must hold possession of the land for himself, as his own, and not for another. 1 R. C. L. sec. 14, p. 701. The evidence on the part of respondents in this report is full and complete. Furthermore, it is supplemented by the undisputed fact that Jacob E. Cohn, appellant's grantor, had actual notice that respondents' possession was adverse and exclusive of him, and the appellant Simpson had constructive notice.

11. That the actual possession of land, with the exercise of the usual acts of ownership and dominion over it, operates in law as constructive notice to all the world of the claim of title under which the possessor holds, is too well settled to merit discussion. Talbert v. Singleton, 42 Cal. 395.

The evidence shows that the respondents at all times

exercised open acts of ownership and dominion over the land as were calculated to inform the appellant and him under whom he claims of the true nature and purpose of the possession to which the land was openly subjected by respondents. The appellant had resided in the vicinity of the land for a period of more than thirty years. He was closely connected by marriage to Jacob E. Cohn, and his father, Isadore Cohn, who had dealt with the entire common estate as his individual property, and it is fair to assume from Mr. Simpson's own testimony that he knew, or, as a man of ordinary prudence must or should have known, the true character of respondents' possession and the exclusive use made by them of the land in accordance with the terms and pretensions of their conveyance.

12. The only possible plausible pretext upon which it might reasonably be asserted that respondents' failure to establish title by prescription is to assume from the circumstances of the pasturage of the land by respondents and the grazing of the land by appellant and others that its common use during the running of the statute of limitations was evidence, when considered with other evidence, tending to establish the fact that respondents' occupancy or use of the land was in itself a recognition, admission, or acknowledgment of appellant's title, and thereby the continuity of their adverse possession was destroyed. We have given this feature of the case such close and prolonged attention that it may be said to account for the delay in this decision. Our conclusion upon this most important branch of the evidence is that there is substantial evidence from which a rational inference may have been drawn by the trial court that respondents did not pasture the uninclosed portion of their holding under their deed in recognition of appellant's title or in subordination to the rights of the cotenancy. In arriving at this conclusion, we have borne in mind that upon authority and good reason it is generally held that the mere grazing of uninclosed grazing land is not sufficient in itself to set in motion the

running of the statute of limitations as against a true owner. This for the reason that the possession is not such as is calculated to give notice that the land is occupied and claimed by another. The appellant's knowledge and notice of the true character of the respondents' use and occupancy of the particular land distinguishes this case from that line of decisions.

The point is made that the grazing of the land by appellant in common with other owners of lands within the large inclosure destroyed the continuity of respondents' possession. We are not in accord with this position. Respondents planted their flag of ownership on the ground in 1901. Its dominion waved over the entire area embraced by their conveyance uninterruptedly from 1901 to 1907. Taking into consideration the nature, character, and location of the property, and the use to which it was openly and notoriously put for pasturage during the pasturage season of the year, it being entirely unoccupied during the remainder of the year, the evidence tends to show that respondents protected their possession as far as it was practicable or profitable for them to do. It is true that they did not openly protest against the enjoyment of the property by appellant and others during the grazing season, but the open and uninclosed condition of the land is accounted for, and the participation by appellant and others in the enjoyment of the property during the grazing season is explained.

13. If the evidence tends to show, as contended, that appellant's permitted and continued grazing of the land during the grazing season was intended as and to be a substantial interruption of respondents' possession, it was a controverted question of fact for the trial court to determine, and not this court.

Our ultimate conclusion on this branch of the evidence is that the appellant and Jacob E. Cohn, his grantor, were bound to take notice of respondents' deed and entry under it into open, hostile, exclusive, and notorious possession under claim of right and in severalty, known

to them at all times, and that, having failed to enforce a recognition of their legal rights, if such they had, within the time prescribed by the statute of limitations, appellant's interest was lost, and is no longer susceptible of enforcement. His interest, by operation of said statute, vested in respondents in possession under their deed. Abernathie v. Con. Va. M. Co., supra; Freeman on Cotenancy, sec. 197.

14. It is the further contention of counsel for the appellant that the offer made by John W. O'Banion, in the year 1914, to Daniel C. Simpson, to purchase his interest in the land in controversy for a cash consideration of $1,000, amounts to a direct positive admission or recognition of Simpson's interest in the land. It is clear that the land, when this offer was made, had been in litigation since 1907, and it is not denied that when the offer was refused by Simpson, O'Banion at the time stated to Simpson that he would law him until he was broke. Under these circumstances it is fair to assume that such an offer was made to purchase peace, and not in recognition of a hostile title.

The judgment and order appealed from are affirmed.

DUCKER, J.: I concur.

COLEMAN, C. J.: I dissent.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.