**HASKINS v. ROSEBERRY et al.**

No. 9524.

Circuit Court of Appeals, Ninth Circuit.

May 7, 1941.

Thomas F. Ryan, of Reno, Nev., and C. B. Tapscott, of Elko, Nev., for appellant.

Thatcher & Woodburn, Geo. B. Thatcher, Wm. Woodburn, and Wm. J. Forman, all of Reno, Nev., for appellees.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Haskins, who claims to be the receiver of certain property, appeals from a decree quieting title to such property in appellees, in a suit brought by Haskins to obtain a decree declaring that he was the owner of such property as receiver.

The Tuscarora-Nevada Mines Company, hereafter called the mining company, was a Maine corporation. On April 14, 1913, suit was filed against it in a United States District Court in New York, and on the same day, Haskins was appointed receiver of all its properties. On May 8, 1913, suit was filed against the mining company in the court below, and on August 19, 1913, Haskins was appointed ancillary receiver of the mining company's properties in Nevada.

On July 6, 1914, Judge Farrington of the court below entered an order that: "There being no answer to the call of this case, ordered that the same be, and is hereby dismissed". On March 17, 1917, Judge Farrington entered an order vacating his order of dismissal entered on July 6, 1914 on the ground that he was disqualified to sit in the case because he was a stockholder in the mining company. On May 22, 1917, in the court below, another judge vacated the order of July 6, 1914, as "inadvertently" made, and reinstated the cause.

On June 19, 1917, Haskins filed a report in the court below reporting receipts and disbursements in the amount of $78,584.15, and filed a similar report in the New York suit on June 30, 1917. On April 13, 1918, the New York court ordered the case "marked off" the equity calendar under equity rule 57.

The taxes assessed on the property belonging to the receivership estate for the year 1921 were not paid, and the property was sold on July 17, 1922, in accordance

with the Nevada statutes, to a partnership. Redemption of the property was not made, and a deed therefor was made on July 19, 1923 by the proper officials. The partnership or the successors in interest have been in possession of the property. Appellees are now vested with whatever title the partnership might have had, had it made no conveyances.

On January 28, 1927, the New York court entered an order as follows:

"This case having been dropped from the Trial Calendar pursuant to the provisions of Rule 57 in Equity, for more than one year and no application having been made, it is

"Ordered that this case be and the same hereby is dismissed without prejudice to a new suit."

On November 29, 1927, the New York court ordered Haskins to "file a further and final accounting within thirty days from the date of the entry of this order". On March 6, 1928, Haskins filed an affidavit in the New York court, stating, among other things:

"That since the filing of said accounting in 1917, no money has passed through deponent's hands in connection with this proceeding, and matters are now as they were then * * *

"Deponent prays that he be relieved from any further duties as receiver under the above-described decree entered on April 14, 1913, and that this affidavit be considered a final accounting of the receiver."

Apparently the only action taken upon the affidavit, was an order filed the same day discharging the surety on the bond Haskins had filed.

On February 16, 1929, Haskins filed in the Nevada court a petition stating in part as follows:

. "* * * that he has filed his report as said Receiver in said case in New York and has been discharged and his sureties released in said case in New York.

"He further reports and states that since filing his report in said case * * * on June 19th, 1917, that he has had no assets or income or property or rights of whatsoever nature except as to the mining claims referred to either as Ancillary Receiver in Nevada, or as Receiver in said New York Case and has had no means of paying the annual assessment work, or paying the taxes, or looking after the protection of said mining claims * * *

"Wherefore, * * * Haskins * * * tenders his resignation in said matter and asks * * * that he and * * * Surety on his bond be released from further liability * * *"

On February 18, 1929, the Nevada court entered an order that "the resignation of * * * Haskins as Ancillary Receiver in the above entitled case be, and the same is hereby accepted" and releasing Haskins and his surety "from further liability". [29 F.Supp. 724, 725.] On April 3, 1929, the Nevada court entered an order releasing Haskins and his surety "from liability".

Nothing occurred in either the New York proceeding or the Nevada proceeding until October 9, 1936, when Haskins filed in the New York court a petition stating among other things that although the New York court had discharged the surety on the bond, he had never been discharged as receiver or divested of his custody of the assets; that because of the increase in the price of gold, the properties were of considerable value, and prayed for permission to file a bond in the amount of $2,500. On the same day the New York court entered an order granting the prayer of the petition.

On December 9, 1936, Haskins filed a petition in the Nevada court substantially like the petition filed in the New York court, but included allegations to the effect that appellees had no title under the tax sale, and prayed for his reinstatement as ancillary receiver. On December 21, 1936, the Nevada court entered an order reinstating Haskins as ancillary receiver.

Thereafter and on May 17, 1937, this suit was commenced praying for a decree adjudicating title to the property in question to be in Haskins as receiver, and cancelling as invalid the deed made on the tax sale by the state officers. The suit was brought on the theory that the property was in custodia legis and could not be sold for non-payment of taxes without the approval of the Nevada court. The answer denied that the property in question was in custodia legis, alleged laches as a defense and counterclaimed for a decree quieting title in appellees. Appellees contend that the answer is broad enough to cover the defenses of estoppel and statute of limitations, and appellant contends to the contrary. After making findings including the above stated facts, the court below concluded that (1) Haskins was estopped from obtaining relief because he was guilty of laches; (2) Has-

kins was barred by Nev.Comp.Laws 1929, § 6449, from obtaining relief; (3) Haskins was barred from obtaining relief by Nev. Comp.Laws 1929, § 8508; and (4) appellees had acquired title by adverse possession. Decree was entered quieting title to the property in appellees, and this appeal followed.

Appellees contend that the suit of appellant is barred by Nev.Comp.Laws 1929, § 6449, which provides in part: "* * * No action or counterclaim for the recovery of lands sold for taxes shall lie unless the same be brought or interposed within three years after the execution and delivery of the deed therefor by the treasurer, any law to the contrary notwithstanding".

The statute is applicable to suits in equity as well as actions at law, since in Nevada there is but one form of civil action. Nev.Comp.Laws 1929, § 8500; White v. Sheldon, 4 Nev. 280, 288. It is clear, therefore, that this cause is barred, if the point may be urged here.

Appellant's only argument regarding appellee's contention that the cause is barred, is that appellees waived the defense by failure to plead it, because Federal Rules of Civil Procedure, rule 8(c), 28 U. S.C.A. following section 723c, requires the statute of limitations to be affirmatively pleaded. Appellees contend that the rule was complied with. We think it unnecessary to decide whether the pleading is sufficient, because Rule 15(b) disposes of the contention in any event. That rule provides in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * * "

We think and hold that the statute above quoted bars the remedy invoked by appellant.

The decree properly dismissed the complaint. In addition, the decree adjudicated title to the properties to be in appellees under the counterclaim. Our determination that appellant is not entitled to relief does not pass on the question as to whether or not appellees are entitled to relief. Appellant does not contend that appellees are not entitled to relief in the event that the statute above quoted is applicable. Appellant does contend that the statute is inapplicable.

The pertinent part of § 6449 not quoted above is as follows: "No tax heretofore or hereafter assessed upon any property, or sale therefor, shall be held invalid by any court of this state on account of any irregularity in any assessment, or on account of any assessment or tax roll not having been made or proceeding had within the time required by law, or on account of any other irregularity, informality, omission, mistake or want of any matter of form or substance in any proceedings which the legislature might have dispensed with in the first place if it had seen fit so to do, and that does not affect the substantial property rights of persons whose property is taxed; and all such proceedings in assessing and levying taxes, and in the sale and conveyance therefor, shall be presumed by all the courts of this state to be legal until the contrary is affirmatively shown. * * * "

Appellant makes the following argument: "The statute does not attempt to cure anything other than *procedural* defects, nor could it do more; while here the defect is *jurisdictional.* The statute cures defects where the power to sell exists; it does not attempt to confer a power of sale where the law prohibits the sale completely." It is said by appellant that power to sell was lacking because the properties were in custodia legis.

We do not agree with this argument. The statute deprives a court of power to hold invalid a sale for taxes on account of any "irregularity, informality, omission, mistake or want of any matter of form or substance in any proceedings which the legislature might have dispensed with in the first place if it had seen fit so to do, and that does not affect the substantial property rights of persons whose property is taxed". The only defect urged is that the taxing authorities failed to obtain the consent of the court prior to making the sale. It is perfectly clear that the failure to obtain the consent of the court before making the sale was an "omission, mistake or want of * * * matter of form or substance" whether it be termed "procedural" or not. It is also perfectly clear that the legislature could have dispensed with the requirement that consent of the court

must be obtained. An example is 28 U.S.C.A. § 125. In fact we know of no rule of law which the legislature could not change except as provided in the Constitution.

Affirmed.

WILBUR, Circuit Judge (concurring).

While I concur in the result reached by my associates, I find myself unable to agree with some of the statements and conclusions in the opinion of the majority. I therefore state the reasons which seem to me to sustain the action of the trial court, first stating some of the reasons why I cannot agree with the opinion of the majority.

After quoting from § 6449, Nevada Compiled Laws of 1929, to the effect that no action or counterclaim for the recovery of lands sold for taxes shall lie unless the same shall be brought within three years, etc., the majority opinion states: "The statute is applicable to suits in equity as well as actions at law, since in Nevada there is but one form of civil action." But the abolition of the formal distinctions between actions at law and suits in equity does not make them identical or necessarily subject to the same defenses. Pomeroy, Code Remedies, 5th Ed., § 13. The fact that there is but one form of civil action in Nevada does not require that a statute of limitations expressly applicable to an action to recover land should be held to apply to an action such as the one at bar in which it is sought to remove a cloud upon title caused by a tax deed. In Colorado, as in Nevada, there is but one form of civil action. The Supreme Court of Colorado, in passing upon § 5733 of the Revised Statutes of Colorado, held that a statute almost identical with that of Nevada (§ 6449, supra) did not apply to an action to remove a cloud upon a title. Munson v. Marks, 52 Colo. 553, 124 P. 187. The following cases, cited by the court, each decided in a state whose law provides for a single civil action and each applying a statute of limitations of similar import, fully support the decision in Munson v. Marks, supra: Beck v. Meroney, 135 N.C. 532, 47 S.E. 613; Mount v. McAulay, 47 Or. 444, 83 P. 529; Kraus v. Montgomery, 114 Ind. 103, 16 N.E. 153. The question has not been determined by the Nevada state courts.

In view of these decisions and of the lack of an authoritative Nevada decision upon the applicability of § 6449 as a statutory defense to the appellant's action to quiet title, I am of opinion that our decision should not rest specifically upon this section of the Nevada statute considered as such a defense. For the same reason I deem it unnecessary to pass upon the question, much discussed by counsel, as to whether the statute of limitations has been sufficiently pleaded. For a similar reason, I am also of opinion that the asserted understanding of the parties that the running of the statute has been put in issue, is, if true, quite immaterial. It does not follow, however, that the state statute of limitations should be wholly disregarded in the case at bar. A federal court, sitting as a court of equity, will apply the doctrine of laches where the remedy is barred by the local statute of limitations. And this is true whether the statute be applicable in the state courts to law actions only as to both legal and equitable proceedings. The rule is thus stated by the Supreme Court, speaking through Mr. Justice Stone, in Russell v. Todd, 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754: "Even though there is no state statute applicable to similar equitable demands, when the jurisdiction of the federal court is concurrent with that of law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations. It thus stays its hand in aid of a legal right which, under the Rules of Decision Act, would be unenforcible in the federal courts of law as well as in the state courts."

In view of this rule so recently stated by the Supreme Court it is very clear that, in applying the doctrine of laches in this equitable proceeding in a federal court, we may consider the effect of § 6449, supra, without the necessity of first determining whether the three-year period fixed by it would or would not be applicable to an equitable action in a state court or, if applicable, whether it has been sufficiently pleaded as a statutory defense.

I also find myself unable to concur in that part of the main opinion which deals with the curative provisions of § 6449, supra, to the effect that no tax shall be held invalid by any court of the state on account of irregularity, etc. The opinion holds the deed to be valid under the curative provision of the statute on the ground that it is "perfectly clear that the legislature could have dispensed with the requirement that consent of the court must be obtained". This I believe to be erroneous. We are here dealing with a conflict of jurisdiction between the federal and state governments.

The United States District Court had assumed jurisdiction over the property in question; it had taken custody of this property by its receiver. With that jurisdiction and custody no state agency was at liberty to interfere. Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390. This principle received a pertinent application in Ex parte Tyler, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689, in which the Supreme Court held that a state could not authorize a tax collector to levy a tax warrant upon property in the hands of a federal court without the permission of that court. If the tax collector could not levy upon the property without the court's permission it follows that a tax deed based upon such a levy must be void. This point does not appear to be seriously disputed by the appellees. They say in their brief: "We have no quarrel with Ex parte Tyler, 149 U.S. 164 [13 S.Ct. 785], 37 L.Ed. 689, or the related cases cited in appellant's brief." On the oral argument they conceded that the tax deed here involved was invalid because the sale was made during the active administration of the property by the federal court. They rest their case on other grounds.

I now state the reasons which lead me to concur in the result reached by my associates. In doing so I shall rely upon the statement of facts contained in the majority opinion with such additional facts as I may state.

The answer sufficiently pleads laches as an affirmative defense. It relies upon plaintiff's alleged failure to assert any claim for the recovery of the property in question for a period of fifteen years during which, to plaintiff's knowledge and without his objection, defendants remained in possession of the property and spent money upon its development. Under the rule of Russell v. Todd, supra, the plaintiff's action to quiet title may be considered as one in aid of his right to possession. In applying the doctrine of laches we may therefore have regard to the Nevada statute of limitations as well as to plaintiff's acquiescence in defendant's activity in developing the property. In applying any statute of limitations it is often difficult to determine when the statute begins to run. That is true in this case; for the court at no time issued an order surrendering the property and the statute could not run against any possessory action to recover the property so long as it remained in custody of the court. Mattingly v. Boyd, 20 How. 128, 15 L.Ed. 845. But in view of the court's release of the receiver from all liability by its order of February 18, 1929, of the receiver's surrender of actual possession upon the issuance of the order, and of the court's inactivity in relation to these supposedly worthless mining claims, I am of opinion that the court must be considered as having intended to surrender its custody of this property at the time the receiver was released of liability. In any equitable view of the situation this short three-year statute of limitations has run in favor of the defendants who with their predecessors have been in possession for nearly fifteen years. In this connection it may be observed that § 8508, idem, provides for a still shorter period (two years) for actions to recover mining claims. This legislation is alone sufficient to support the defense of laches.

Furthermore, the doctrine of laches is peculiarly applicable when there has been such a change in the situation of the parties that the enforcement of rights which have long lain dormant would work an injustice to the defendant, and this is emphatically such a case, as a brief review of some of the facts will show. As early as April 3, 1923, the court having control of the property had evidently come to the conclusion that the property was worthless and the situation hopeless. The report of the receiver showed that he had issued receiver's certificates for $75,000, none of which had been paid, had expended $78,000, could not sell the property, and had no funds with which to pay taxes, or to do the annual assessment work upon the mining claims. Under these conditions the court released the receiver and his sureties from liability. It is evident from the report that the purpose of the receivership had wholly failed. Without additional funds the property would be lost by the failure to do assessment work and the water rights appurtenant thereto would be lost because of nonuser. The receiver abandoned the property and it was taken over by the appellees as early as 1923 when the tax deed was issued. They have since expended $57,000 in caring for and developing the property. From 1923 no action was taken by the plaintiff or defendant, or any of the creditors or holders of receiver's certificates to have the property administered by the court until the recent increase in the price of gold, the effect of which was to give these mining claims a value which they did not possess when the receiver abandoned them in 1923. It would be difficult to find a clearer

case for applying the equitable doctrine of laches.

The decree of the District Court not only denied relief to the plaintiff but went farther and gave affirmative relief to the defendants, quieting their title to the property in question as against any claim of the plaintiff. This portion of the decree was responsive to the allegations and prayer of the counterclaim. It cannot be supported by the doctrine of laches, for that is purely a matter of defense. But it is supported by the statutory law of Nevada as applied to the facts which were found by the court upon sufficient evidence. Under section 8513, Nevada Compiled Laws, 1929, it has been held by the Supreme Court of Nevada that title may be acquired by one who, claiming title under a written instrument, has remained in adverse possession of real property for a period of five years. Gander v. Simpson, 37 Nev. 1, 137 P. 514; O'Banion v. Simpson, 44 Nev. 188, 191 P. 1083. By section 8505, idem, the time required for the acquisition of title to mining claims by adverse possession under this section appears to be reduced to two years. Sec. 8517, however, requires that all taxes must be paid by the adverse possessor during the statutory period. Here, as found by the court, the defendants had been in adverse possession of all this property for nearly fifteen years and paid all taxes accruing during that time. Section 8514, idem, prescribes what may be considered a sufficient occupancy for the purpose of securing title by adverse possession under § 8513, supra. One of the cases designated as such is "the ordinary uses of the occupant." Here the appellees carried on continuous mining operations and at the same time made an ordinary use of the water rights and distributing facilities involved herein and covered by the decree. As to the mining claims this point is expressly covered by § 8508, idem: "Occupation and adverse possession of a mining claim shall consist in holding and working the same, in the usual and customary mode of holding and working similar claims in the vicinity thereof."

Unquestionably the character and duration of defendants' adverse possession were sufficient to comply with these pertinent sections of Nevada Compiled statutes, 1929. But appellant argues that they are inapplicable for other reasons which will now be considered.

First, appellant contends that these statutory provisions are inapplicable on the broad ground that adverse possession cannot be acquired as to property which is in custodia legis. Some cases and text books are cited in support of the rule upon which appellant thus relies and I assume that the law is in accordance with these authorities; but, for reasons which I have already stated in discussing the defense of laches as applied to the plaintiff's case, I am of opinion the District Court should be considered as having surrendered the property at so early a date that no question could arise as to the sufficiency of the time in which to acquire title by adverse possession under the pertinent sections of Nevada Compiled Laws, 1929. The order accepting the receiver's resignation and releasing him from liability on account of his inability to pay taxes, do assessment work and meet necessary expenses was consistent only with consent by the court that the state should exercise its taxing power and enforce its rights by sale in accordance with the state statutes and that the purchaser should take possession under the deed. I am, therefore, of opinion that this objection of the appellant is untenable.

Appellant further contends that, assuming that this property could be acquired by adverse possession under the statutory law of Nevada, it was not so acquired in the case at bar because it was not based upon a "written instrument" as required by § 8513, supra. It is argued that the tax deed was void when issued since the property was at that time in the custody of the District Court through its receiver and could not therefore be conveyed by a tax deed. As previously stated, I agree that the tax deed was void when issued; but it does not follow that it was insufficient for the purpose of § 8513, supra. This deed was regular in form and disclosed on its face no jurisdictional defect. It was acquired and possession taken under its apparent authority in entire good faith. It appears to be well settled in jurisdictions with similar statutes that such a deed, although void for reasons not apparent on its face, is sufficient as an instrument of title when, as in the case at bar, it was accepted in good faith and made the basis of actual possession for the statutory period. 1 Am.Jur. 901; Widdicomb Co. v. Card, 218 Mich. 72, 187 N.W. 308, 22 A.L.R. 545, 550. That this is in harmony with the law of Nevada with reference to adverse possession under

a tax deed originally invalid would seem to be a necessary inference from the following provision of § 6449, supra: "No action or counterclaim for the recovery of lands sold for taxes shall lie unless the same be brought or interposed within three years after the execution and delivery of the deed therefor by the treasurer, any law to the contrary notwithstanding." In view of this sweeping language, which necessarily gives practical effect to a tax deed which may have been invalid when issued, it would be difficult to maintain the proposition that such a deed is not such a "written instrument" as will sustain the acquisition of a title by adverse possession under § 8513, Nevada Compiled Laws, 1929.

For these reasons I am of opinion that the decree should be affirmed.